# CHARLESTON.

## ALLEN & WHEELER CO. v. FARR.

### Submitted October 16, 1917.  Decided October 23, 1917.

1. SALES—*Title to Goods—Bill of Lading.*
   Where the seller ships goods on the order of the buyer, ''on usual terms delivered,'' and forwards the bill of lading with draft attached to a bank, with direction to notify the buyer, the title does not pass, in the absence of clear proof of a contrary intention by the contracting parties.  (p. 132).

2. SAME—*Breach of Contract—Liability.*
   A breach of his contract by the purchaser of goods, when performance thereof is tendered by the seller, renders him liable in damages.  (p. 132).

3. SAME—*Loss in Transit—Buyer's Negligence—Damages.*
   Through a broker in Huntington, F., a grain dealer in that city, ordered from A. & W. Co., in Troy, Ohio, a carload of grain.  It arrived in Huntington, in good condition, on the evening of March 25, 1913, and on the next morning was placed on a spur track built for F's. accommodation and he was immediately notified by postal card dropped in the city post-office.  Bill of lading with draft attached had been mailed by A. & W. Co. to the Huntington National Bank, with instructions to notify F., and was received by it on the 25th day of March.  It immediately notified F. by telephone and was requested by him to hold the draft until arrival of the car.  F. did not pay the draft or take up the bill of lading, and on the morning of the 28th an unusual flood in the Ohio River submerged the spur track, and the water continued to rise until it destroyed the grain.  *Held:* F. is liable in damages to A. & W. Co. for his negligence in not taking up the bill of lading and receiving the grain.  (p. 132).

Error to Circuit Court, Cabell County.

Action by the Allen & Wheeler Company against John S.

Farr. Verdict for plaintiff was set aside, and a new trial awarded, and plaintiff excepts and brings error.

*Reversed, and judgment for plaintiff.*

*Campbell, Brown & Davis,* for plaintiff in error.

*Marcum & Shepherd,* for defendant in error.

WILLIAMS, JUDGE:

Defendant, a grain dealer in the City of Huntington, purchased, through H. W. Aleshire Company, a broker in said city, from Allen & Wheeler Company, a corporation engaged in the milling business in the City of Troy, Ohio, one split car of grain consisting of 500 bushels of yellow shelled corn and 800 bushels of oats, to be shipped on "usual terms, delivered." The order was made on March 18, 1913, and on the evening of the 25th of March the carload of grain arrived in Huntington; on the morning of the 26th it was placed on a spur track, built by the Chesapeake & Ohio Railway Company for defendant's accommodation and use, and a postal notice placed in the post-office by the freight agent, addressed to defendant. Plaintiff billed the car to itself as consignee, and mailed the bill of lading, with draft attached, to Huntington National Bank, and requested it to notify defendant. The draft and bill of lading were received by the bank on the 25th, and it immediately notified defendant by telephone and by mail, and he requested the bank to hold the draft until the arrival of the car. The grain remained in the car on the spur track until it was so damaged by an unprecedented rise in the Ohio River as to be worthless. On the morning of the 25th the stage of the river at Huntington was 14.1 feet; on the 26th, 17.2 feet; on the 27th, 39.4 feet; and on the 28th 54.5 feet. The spur track was not submerged until the morning of the 28th.

Defendant declined to pay for the grain and plaintiff brought this action. The declaration contains two counts, the first for the price of the grain sold and delivered, and the second for damages for a breach of the contract to purchase the grain. The jury found for the plaintiff the sum of $529.39. On motion of defendant the court set it aside and

awarded a new trial, and plaintiff excepted and was awarded this writ of error.

If the evidence supports the verdict on either count in the declaration, and no error was committed in the instructions to the jury, the verdict should not have been set aside. The evidence does not prove that delivery had been made to defendant, or that title had passed. Plaintiff was both consignor and consignee, and had mailed the bill of lading with draft attached to the Huntington National Bank, thereby constituting the bank its agent for the purpose of collecting the draft and delivering the bill of lading, the indicia of ownership and right to the possession, to defendant. The purpose of plaintiff, thus shown, to retain title to the grain and control of the shipment until it was paid for, is obvious. True, title may pass without actual or constructive delivery where such was the intention of the contracting parties. But that was clearly not their intention in this case.

But the evidence is sufficient to sustain the verdict on the other theory of the case. The evidence that the carload of grain was placed on the spur track leading to defendant's warehouse on the morning of the 26th of March, and that he was immediately notified that it was there, by postal card dropped in the post office that morning, is not denied. Nor is it controverted that he was notified by telephone the evening of the 25th by the bank the draft and bill of lading were in its hands, and that he requested the bank to hold the draft. According to the evidence, defendant made no effort to unload the car until the rise of the river made it impossible and destroyed the grain.

Plaintiff's evidence, undenied, proves the grain was of the kind and quality ordered and was shipped in good condition. It was incumbent upon defendant to be diligent in performing his part of the contract. In view of the condition of high water, of which he evidently knew, greater diligence was required of him to get possession of the car and unload the grain than would be necessary under ordinary conditions and circumstances. He claims that the draft was not presented to him and payment demanded, and that he was not given an opportunity to inspect the grain. But he

does not deny he was notified of the arrival of the bill of lading and draft, and that he told the bank to hold the draft, nor does he claim to have made any effort to get permission to inspect the grain.   Being asked if he did not have the right of inspection before paying the draft he answered as follows:  "In the first place we didn't have the right of inspection or didn't go into the car or rather don't go into the car unless we get the agent or broker.   Q. Did you make any effort to do that?   A.  Well, I don't remember the circumstances now."   Moreover, it is proven to be a local custom in Huntington, when a draft with bill of lading attached is forwarded to a bank for collection, simply to notify the purchaser by telephone of the arrival of the draft, and that is a sufficient presentment.   However that may be, actual presentment to defendant in person was not necessary in this case since he does not deny he was notified by the bank that it had the draft and requested it to hold it.   The jury must have believed, from the evidence and the unusual circumstances, his delay in paying the draft and thereby obtaining possession of the grain was unreasonable delay causing the loss.   It was a contract of sale for cash, and plaintiff had made a tender of performance on its part by causing the carload of grain to be placed on defendant's spur-track in the city of Huntington, and by placing the bill of lading therefor in the hands of the bank with instructions to deliver it to defendant on payment of the draft.   By payment of the draft he could have gotten the bill of lading, and would have had all of the 27th, and perhaps the 26th, in which to unload the car and save the grain.   "An offer on the part of the seller to perform his part of the contract by delivery of the goods is sufficient to fix the liability of the buyer."   35 Cyc. 169; and numerous cases cited in note.

The court gave three instructions for plaintiff of which complaint is made.   We find no error prejudicial to defendant in them.   The first and second state the law correctly respecting liability under the second count of the declaration.   The third told the jury, if they believed from the evidence defendant had purchased the grain to be paid for on its arrival in Huntington and it did arrive before damage or loss

occurred, then such arrival constituted delivery within the meaning of the contract. This instruction is not binding, and when read in connection with the instructions given for defendant, defining more particularly what is essential to constitute delivery, could not in anywise have prejudiced him. Defendant's No. 2 is more favorable than the law entitles him to, in view of the uncontroverted facts in the case.

The judgment will be set aside, the verdict reinstated and judgment entered thereon by this court.

*Reversed, and judgment for plaintiff.*