# CHARLESTON.

HURRICANE MILLING COMPANY v. STEEL & PAYNE COMPANY.

Submitted May 13, 1919.   Decided May 27, 1919.

1. BROKERS—*Negotiation   of   Contract—Nonperformance—Personal Liability.*

   A broker authoritatively representing a known or disclosed principal, as vendor in the sale of a commodity, not notified, at the time of the sale, of purpose of the vendee to hold him responsible for performance of the contract, nor bound by its terms in any form is not personally liable for any breach thereof.  (p. 379).

2. SAME.

   To absolve a broker from personal liability in such case, it suffices that the vendee knew, before consummation of the contract of sale, that the person negotiating it was a broker engaged in the sale, as such, of the kind of commodity in question, and that he was then selling the vendee property belonging to a third person. The contract need not show by express stipulation, or express warning given at the time of the sale, that the negotiator was making it as a broker and for a third party.  (p. 379).

3. SAME.

In such case, the relation of the parties to the transaction and knowledge thereof on the part of the vendee may be established in an action by the vendee against the broker on account of a breach of the contract, by proof of facts and circumstances warranting inference thereof by the jury; and, for such purpose, evidence of the situation of the parties and the attendant facts and circumstances is admissible. (p. 379).

4. SAME—*Sale by Broker—Knowledge of Buyer—Evidence.*

Unqualified and unexplained payment by the vendee of a sight draft with bill of lading attached, for the contract price of the commodity, reception by the vendee of a written confirmation of the sale, from the broker, disclosing the name of his principal and advising that the sale was made for his account, and identity of the manner of the sale, delivery and payment with those of others of the same kind of commodity, previously effected between the same parties and by the same broker, are each conclusive proof of the vendee's knowledge of the relation of the parties to one another in the transaction. (p. 381).

5. SAME—*Nondisclosure of Principal—Burden of Proof.*

If, in the case of such a sale, there is liability on the part of the broker by reason of non-disclosure of his principal, for breach of a warranty of quality, due to injury in transportation, the burden is upon the vendee to prove the injury occurred before delivery of the commodity at the place of delivery specified in the contract. (p. 381).

Error to Circuit Court, Kanawha County.

Action by the Hurricane Milling Company against the Steel & Payne Company. Judgment for plaintiff, and defendant brings error.

*Reversed and remanded.*

*Blue & McCabe* and *Morton & Mohler,* for plaintiff in error.

POFFENBARGER, JUDGE:

The judgment brought up by this writ of error was obtained against the defendant as vendor of a car-load of damaged corn. It resisted the action on two grounds: (1), that it was a mere agent or broker acting for a known or disclosed principal, in the transaction, and, therefore, not being a vendor at all, was not liable for the alleged breach of the contract; and, (2), that

the injury to the corn was occasioned by negligence of the vendee, after delivery thereof. The plaintiff having declined to accept it, the carrier disposed of it and took its charges out of the proceeds and the residue, $619.76, was applied on the purchase price, leaving a difference of $395.38, which the plaintiff recovered. The assignments of error go to rulings of the court, respecting admission and exclusion of evidence, instructions and the motion for a new trial.

According to the narration of the transaction by the plaintiff's principal witness, it was as follows: Early in May, 1912, the defendant, doing business in Charleston, made the plaintiff an offer of sale of corn, by telephone, and the latter accepted the offer to the extent of two car-loads, both to be No. 2 kiln dried, one white and the other yellow. Afterwards, the plaintiff received from the defendant a letter of confirmation of the sale, saying ''For account of Paul Kuhn & Company.'' Some days later, the corn arrived, just when the record does not clearly disclose. In one part of this testimony, the witness suggests May 11th. but, in another, he disclaims knowledge of the date and says it arrived possibly a week or more prior to May 27th., the date on which it was examined, and the yellow corn found to be badly damaged. Before it was examined, the plaintiff paid a sight draft for the contract price drawn on it by Paul Kuhn & Company, of Terre Haute, Ind., with a bill of lading attached, showing the corn had been consigned to it by Paul Kuhn & Company. Having paid that company in full and yet treating the Steel & Payne Company as the vendor and its debtor in the amount paid for the corn, the plaintiff credited it with the amount received from the carrier, on account of the proceeds of the sale of the corn. Plaintiff had bought corn of Paul Kuhn & Company on several previous occasions, through the Steel & Payne Company, the method of consumation varying from that of the one in question, the witness protests, in only one particular, namely, right of examination before payment. As to right of inspection of the car-load in question, his testimony is not clear. In one place, he says he did not sooner pay the draft and examine the car, because the consignee was not ready for it, and, in another, that he

"Never had the right to look at that corn," until after payment of the draft. He denied that plaintiff had ever bought any corn of Paul Kuhn & Company, notwithstanding the former transactions referred to in which the corn had come from that company, did not know any of the drafts paid were drawn in favor of the defendant, but thought some of them had been, because plaintiff had sometimes gotten "some truck" in Charleston, for which drafts were made by the defendant.

The trial court excluded evidence offered to prove the defendant had placed orders of the plaintiff for corn in May, 1912; that it had previously sold the defendant other cars of corn in the same way; that it was a broker handling vast quantities of corn, as such, and acting as agent for Paul Kuhn & Co.; that by custom a period of twenty-four hours was allowed for examination of corn by the consignee; that the corn in question was sold by receipt of a quotation from Paul Kuhn & Co., an offer to the plaintiff, its acceptance, a telegraphic order to the sellers, confirmation by them and confirmation by the broker to the purchasers; that the vendee knew from prior transactions who the sellers were; and that the defendant had no authority to sell otherwise than as agent of Paul Kuhn & Co., and in the manner above indicated.

An agent or broker contracting for and on behalf of a principal known or disclosed to the person with whom the contract is made, is not personally bound by it, nor liable for a breach thereof, unless the credit has been extended to him or he has expressly bound himself by the contract in some form. *Johnson* v. *Welch,* 42 W. Va. 18; *Ogden* v. *Raymond,* 22 Conn. 379; *McCurdy* v. *Rogers,* 21 Wis. 199; Story, Agency, sec. 261; Clark & Skyles, Agency, sec. 564; Mechen, Agency, sec. 1357.

The tendency of the rejected evidence to prove plaintiff's knowledge of the capacity in which the defendant acted is obvious. It had made several sales of the same commodity from the same principal to the plaintiff and in the same way. For previous consignments, plaintiff had paid Paul Kuhn & Co. The requirement of specific proof of the plaintiff's knowledge of the relation of principal and agent, as a condition pre-

cedent to the admission of facts and circumstances tending to prove it, is too rigid and restrictive. On an issue of the kind developed here, all of the facts and circumstances tending to cast any light upon the relations of the parties are generally relevant and material. It was not at all improper for the jury to know that part of the defendant's business was brokerage in corn, and that it usually represented a certain firm of corn dealers, as sellers. These circumstances do not of themselves constitute a defense to the action, but they are essential elements of the defense. Coupled with notice thereof to the plaintiff, they make out a complete defense. The order of the introduction of proof is not ordinarily deemed to be important, and it was not necessary to prove that notice of the capacity in which the defendant acted was given in terms, in so many words. An agent or broker seldom stipulates that he acts only as such or gives formal notice of his relation to the transaction. Parties to a business transaction may always be deemed to have taken cognizance of obvious facts. Previous dealing with the defendant as broker for Paul Kuhn & Company, reception of a confirmation of the sale in question as having been made for them and payment of the draft for the price of the corn drawn in their favor were facts from which a jury could well infer notice of the relation claimed by the defendant. *Drake v. Pope*, (Ark.), 95 S. W. 774. All of the evidence rejected, except witness Davis' expression of opinion that plaintiff knew the corn was coming from Paul Kuhn & Co. and that pertaining to custom governing the time allowed for examination, were clearly admissible. In point of fact, nearly all of the circumstances to which it related were admitted by the plaintiff's witnesss in some form. The jury were as competent as the witness to form an opinion as to whether the circumstances justified an inference of notice, wherefore so much of Davis' testimony as expressed that opinion was properly rejected. The proffer of evidence as to custom was too narrow . There is no presumtion of knowledge of a custom or usage, unless it is so general or notorious that the parties to a transaction of which it is claimed to have constituted a part may be deemed to have had knowledge of it. *Anderson* v. *Lewis,* 64 W. Va. 297;

*Sims* v. *Carpenter,* 68 W. Va. 223. The proffer of evidence did not indicate generality or notoriety of the custom relied upon. Gerlach's evidence was properly admitted. He knew something about the transaction.

Three of the instructions requested by the defendant and refused by the court, if given, would have virtually directed a verdict for it. One of them made payment of the purchase price to Paul Kuhn & Co. conclusive, another, the confirmation of the sale, and another, the making of the sale in question, in the manner in which sales of corn were customarily made between Paul Kuhn & Co. and the plaintiff. Unqualified and unexplained, as they were, these facts, or any one of them, constituted a defense to the action. It is inconceivable that the plaintiff could have deemed payment to Paul Kuhn & Co. to be a discharge of indebtedness to the Steel and Payne Co. It paid the former because it knew they were the sellers and because such payment was a condition precedent to its procurement of a title then vested in them. Admission of receipt of the confirmation was unequivocal admission of notice of the agency of the defendant. Purchase of the corn in question in the same manner in which other corn had been purchased by the plaintiff from the same seller and paid for was equally conclusive of notice. It did not differ in any material respect. There is no proof that anybody forbade or prevented inspection of the corn, before payment, or that the privilege or right of inspection was requested or demanded. The consignee always has right of inspection of the goods. Hutchinson, Carriers, 3rd Ed. sec. 733. If there were any right of action against the defendant, the burden would be upon the plaintiff to show that the injury occurred before the arrival of the car, for, after that event, there was a duty upon it to accept the corn and take care of it, unless it had a valid ground of rejection. *Allen & Wheeler* v. *Farr,* 81 W. Va. 150. In the absence of such ground, it had no cause of action. Proof thereof was obviously a part of its case. Hence, defendant's instruction No. 2, placing this burden upon the plaintiff should have been given.

It is hardly necessary, in view of the conclusions stated,

to say the verdict is contrary to the law and the evidence and should have been set aside for that reason, as well as for the errors noted.

The judgment will be reversed, the verdict set aside and the case remanded for a new trial.

*Reversed and remanded.*