## MISSOURI–KANSAS–TEXAS R. CO. OF TEXAS v. ASHLOCK.

No. 12830.

Court of Civil Appeals of Texas. Dallas.

Jan. 20, 1940.

Rehearing Denied Feb. 24, 1940.

944

C. C. Huff, of Dallas, and Head, Dillard, Maxey-Freeman & McReynolds, of Sherman, for appellant.

Johnson & Oliphant, of Dallas, for appellee.

LOONEY, Justice.

Appellee, Jim Ashlock, instituted this suit against appellant, Missouri-Kansas-Texas Railroad Company of Texas, to recover damages for personal injuries alleged to have been sustained by him as the result of negligence of appellant, its agents, servants, and employes.

The grounds of negligence alleged and submitted to the jury as the proximate cause of appellee's injuries, were: (1) The practice of mail clerks, in unloading mail at Whitewright, of throwing mail sacks from a moving train onto a street or sidewalk; (2) failure of the defendant to protest to the federal government against such practice; (3) operation of defendant's train carrying the mail in excess of fifteen (15) miles per hour, in violation of an ordinance of the City of Whitewright; and (4), failure of defendant to give any warning that mail sacks would be thrown into the street at the time or on the occasion in question. The court also submitted unavoidable accident. The jury found all the issues in favor of appellee and assessed his damages at $5,700. Upon such findings, judgment was entered against appellant.

We consider the case well tried; only one procedural assignment is directed to the action of the trial court in submission of issues to the jury, and that is: "The court erred in submitting special issue No. 1, without explaining or defining the word 'practice', used therein". There is no merit in the assignment. All other assignments are directed to the insufficiency of the evidence to sustain the judgment; thus resulting in refusal of the trial court to give an instructed verdict.

■ The word "practice", in the sense in which it was used by the trial court in submission of the issue challenged by appellant, making inquiry whether or not it was the practice of the mail clerks, on or before the occasion of the injury, to throw mail sacks onto the street or sidewalk that ran by the south end of defendant's station, is not a technical legal word which courts are required to define for the guidance of the jury, thus enabling it to properly pass upon and render a verdict on the issues submitted.

The word "practice" was intended in the sense of custom, and used in its popular sense, synonymous with "mode", or "course of action", frequently exercised. The custom or practice of mail clerks in throwing off mail at street crossings (dangerous to the public), if known to the Railroad Company, or if of such frequency as to become general, common, and usual, and the employes, servants, and agents of the Railroad Company were in a position to know of such practice, the law would create a legal presumption of notice; thus, in the absence of proof to the contrary, the company would be liable for its failure, through its employes, to protest against such practice. The use of the term "practice" does not necessarily imply that the course of action of the mail clerk, in throwing off mail bags at a place of danger, where pleadings and evidence established that the word was used in its popular sense and not in such general and usual sense as to impart notice to the carrier, failure to define the word is not error. If the defendant, by its officers as its agents, had actual knowledge of the practice, whether sporadic or isolated, or customary and usual, suggesting danger to anyone who might be at the place of performance, and failed to protest against such practice to federal authorities having mail distribution in charge, the carrier would be liable for resulting damages. However, this appeal, as we interpret the record, does not involve actual knowledge of the Railroad Company, through its agents; thus, we must determine whether the practice was of such frequency that the law would presume the defendant had notice, in the absence of proof to the contrary. It is in evidence that defendant did not protest against such practice.

■ Carriers of the mail are not responsible for the negligent acts of mail clerks. They are employes of the federal government and under its control, but, if it can be said that such employes indulged in the practice of throwing off the mail bags at a place and in a manner whereby injury to persons might reasonably be foreseen, and the frequency of the practice is such that notice to the carrier could reasonably be presumed, the failure of the carrier to take the necessary steps to stop the practice will render it liable. Lancaster v. Bradford, Tex.Civ.App., 279 S.W. 607; Sturgill v. Chesapeake & O. R. Co., 227 Ky. 44, 11 S.W. 2d 983; Walker v. Hannibal & St. J. R. Co., 121 Mo. 575, 26 S.W. 360, 24 L.R.A. 363, 42 Am.St.Rep. 547; Hurricane Milling Co.

v. Steel & Payne Co., 84 W.Va. 376, 99 S.E. 490, 6 A.L.R. 637; Columbia Life Ins. Co. v. Tousey, 152 Ky. 447, 153 S.W. 767.

In the case at bar, the primary liability is directed to the negligent acts of the mail clerk alone, in throwing the mail bag from the train into the street. The elements of liability leveled against the appellant were, that the mail bag was thrown from the train at a dangerous place; that it was the practice of the mail clerks to throw the mail bag into the street, and that defendant had knowledge of such practice and failed to protest against it. Appellee relies upon the rule of presumption to impute knowledge of such practice to the carrier. The question then is, does the evidence in the case raise the issues of a dangerous practice or custom of the postal clerks, and of presumptive knowledge by the railroad officials of such practice? It must be held that the wrongful acts of mail clerks must be shown to be of such a general and usual custom or practice that the law will impute notice to the carrier.

The undisputed evidence shows, and we think the case was fully developed, that appellant railroad extends north and south through the town of Whitewright, and its station, or depot, is on the west side of its track and a few feet north of a 60-foot public street (Main Street), which extends east and west and across the tracks. Under the requirements and regulations of the United States Interstate Commerce and Postal Department, appellant transported on its train, mail and clerks, in special cars provided for that purpose, under the exclusive control of the United States Postal authorities. Appellant's train, involved in this suit, was scheduled to pass through Whitewright daily at 6:02 P. M., going north, and another, going south, at 7:50 A. M. Neither of these trains stopped at Whitewright, but both received and discharged mail while in motion. To receive the mail, appellant erected a crane, a mechanical device, which releases the mail bags to the postal clerks as the trains pass, and, at the same time, the clerks are required to discharge the mail bags from the mail car, just as the crane releases the mail to the clerks. The mail bags are supposed to fall to the ground on the right-of-way near the track, at or near the crane, and be picked up and taken to the post office by employes of the Government Postal Department. The crane was located about 234 feet south of the station, which is about 174 feet south of the street, and 50 feet south of a large caution or danger sign, bearing the warning: "Caution. Look out for mail bag". On November 11, 1937, appellee was on a walkway on the north side of Main Street, about 15 or 20 feet west of the crossing, waiting for the north bound train to pass; and, while standing there, the train, moving about 50 miles per hour, passed, and a mail bag thrown therefrom by a postal clerk, struck him on the head. There is no testimony that mail bags had theretofore been seen to have been thrown from the mail car to the height of a man standing 15 or 20 feet away from the passing train. The only testimony that mail bags were discharged at the street crossing is related by the witnesses, Herman Riddle, James Clayborn, and Lee Norris. Riddle testified, in effect, that he had seen mail bags thrown off the north bound train ten or fifteen times a year, sometimes south of the street, sometimes in the road, and along the right-of-way south to the mail crane. The bags would fall to the ground right beside the train, bounce and go off in the roadway from the train; sometimes they would fall in the street beside the depot. The mail bags were supposed to be thrown off between the crane and the caution sign, but they did not always throw them off there. Clayborn testified very much to the same effect as did Riddle, that he had observed the mail bags thrown off the train about a half dozen times. They would strike about the middle of the street and roll to the corner of the depot. Norris also gave similar testimony, that he was familiar with the location of the railroad, street, depot, crane, etc., and that he had, on numerous occasions, seen mail unloaded all along the right-of-way from the crane to the depot, and that, at times, the mail bags would fall in the street, south of the street, along the right-of-way, and up against the depot; and, in a few instances, several times, saw mail bags roll across the street. He testified further that, over a period of twenty years, he saw mail bags roll across the street, probably a dozen times, or more, and for the past two years, probably a half dozen times or more, but at no time had he ever seen mail bags thrown out high enough to hit a man passing the station.

It is evident, we think, that the proffer of evidence as to practice or custom is too narrow to visit primary liability upon the Railroad Company for negligent acts of the postal clerk. The clerk, Mr. Ray, who threw off the mail pouch in question,

had been on the train involved in this controversy for only one and one-half months, and there is no incident specifically designated and chargeable to him, other than the one involved in this accident. The north bound train is shown to have run through Whitewright 365 times a year, and such is also true of the south bound. Thus, assuming and reviewing the testimony in the light most favorable to appellee, it shows only a comparatively few isolated instances of irregularity in throwing off the mail bags, over a long period of time, and, we think, is wholly insufficient to establish a general or usual practice of the mail clerk in dispatching mail at the street crossing, and in a manner suggestive of danger. The mail bags were thrown to the ground, near the tracks, and rolled across the street to the depot; evidently not a dangerous practice. These isolated instances are insufficient to raise a presumption of knowledge on the part of the Railroad Company.

■ Furthermore, we do not think the failure of defendant to introduce as witnesses, its local agents occupying positions in the depot, is of any probative force on the issue involved. The record shows that there were only two local agents; the station agent and cashier; and neither were on duty at the time the north bound train passed through Whitewright. They went on duty at 8 o'clock, A. M. and off duty at 5 o'clock, P. M. The schedule of the mail trains was 7:50, A. M. and 6:02, P. M., respectively, and there is no evidence that either agent was in the depot, or in position to keep a check or observe the circumstances of irregularity of the postal clerks discharging the mail pouches. They were off duty at the hour the trains passed through Whitewright; thus, the rule announced in Sullivan v. Fant, Tex.Civ.App., 160 S.W. 612, 616, quoting Justice Gill, in Pullman Palace Car v. Nelson, 22 Tex.Civ.App. 223, 54 S.W. 624, that, "When the proof tends to establish a fact and at the same time discloses that it is within the power and to the interest of the opposing party to disprove it, if false, the silence of the opposing party not only strengthens the probative force of the affirmative proof but of itself is clothed with a certain probative force," has no application in this case. Certainly the rule does not assume that the defendant's employes were present at the time of any of the irregularities suggested in the record, when their employment, according to schedule,

ceased at 5 o'clock, P. M. and the train passed at 6:02 P. M.

The liability of the Railroad Company resting on the wrongful acts of a mail clerk, and the evidence being insufficient that it knowingly suffered such clerk to engage in practices dangerous to those in proximity to its track, to whom the Railroad Company owed the duty of reasonable care to protect from injury by reason of the passage of its trains, we turn now to the contention that the company was liable to appellant because the train, from which the mail pouch was thrown, was violating the speed ordinance of the municipality of Whitewright, which fixes the maximum speed of trains at 15 miles per hour.

■ The causal connection urged between the speed of the train and the injury sustained by appellee is that, except for such speed, the mail bag would either have been thrown off elsewhere, or, if thrown off where it was, might not have struck appellee, who was standing clear of danger— 15 or 20 feet from the moving train. It may be conceded that appellee would not have been injured, except for the independent intervention of the wrongful act of the mail clerk; and it may also be conceded that the injury might not have occurred except for the unlawful speed of appellant's train. It is evident that, if it had not been for the intervention of the responsible mail clerk, appellant's negligence would have produced no damage to appellee. The causal connection between the negligence of the Railroad Company and the damages sustained by the injured party is broken by the interposition of the negligent acts of the postal clerk. Clearly, the speed of the train had nothing whatever to do with the mail clerk's throwing off the mail bag at the wrong place. The Supreme Court of Mississippi, in Louisville & N. R. Co. v. Daniels, 135 Miss. 33, 99 So. 434, 435, 34 A.L.R. 516, said: "There was not an unbroken chain of sequence leading up to the last act by which the injury was inflicted. On the contrary, a free, independent agent, namely, the mail clerk, intervened, and the most that can be said is, used the speed of appellant's train to cause the injury complained of. It was an act on the part of the mail clerk that appellant could not have reasonably foreseen would occur. It never had occurred before. If this were a case where there was any evidence whatever tending to show that the speed of the train had any causal connection

with the throwing out of the mail bag at the wrong place, it might be a question for the jury. But there was no such evidence." (Citing authorities supporting the doctrine of independent, intervening efficient cause).

On careful review of the record, we conclude that, appellant's motion that the jury be directed to return a verdict for appellant should have been sustained, and the action of the court in overruling the motion (the basis of appellant's contention that the evidence shows no liability), presents error. The judgment of the court below is reversed and judgment here rendered for appellant.

Reversed and rendered.