Judith L. **FLEMING**, Plaintiff,

v.

**UNITED TEACHER ASSOCIATES IN-SURANCE COMPANY, a corporation; and Jennifer Seckman, Defendant.**

No. CIV.A. 1:02–1392.

United States District Court,
S.D. West Virginia,
At Bluefield.

March 5, 2003.

J. Franklin Long, Bluefield, WV, for Plaintiff.

Ancil G. Ramey, Hannah B. Curry, Steptoe & Johnson, Henry E. Wood, III, Wood Law Office, Charleston, WV, for Defendant.

## MEMORANDUM OPINION AND ORDER

FABER, Chief Judge.

### I. *Introduction*

This civil action was filed in the Circuit Court of McDowell County, West Virginia, on October 23, 2002. The plaintiff, Judith L. Fleming ("Fleming") is a citizen and resident of West Virginia, who was em-

ployed by the Board of Education of Mercer County, West Virginia. The defendant United Teacher Associates Insurance Company ("United Teachers") is a corporation organized and existing under the laws of Texas with a principal place of business in Austin, Texas. Jennifer Seckman ("Seckman") is a citizen and resident of West Virginia, is named as an additional defendant. Seckman is an insurance agent who worked for United Teachers.

The complaint charges that United Teachers offered and sold to employees of the boards of education in Mercer and McDowell Counties of West Virginia insurance policies known as First Diagnosis Cancer Benefit policies. Fleming bought one of the policies in April, 2001, and paid for it through monthly payroll deductions. The policy provided coverage in the amount of $20,000. Seckman was the agent for United Teachers who sold the policy to Fleming.

According to the complaint, Fleming was diagnosed with colon cancer in July, 2001, filed a claim for benefits under the policy with United Teachers, and was denied coverage. The complaint sets out numerous claims against the defendants. Count I is essentially a breach of contract claim against United Teachers for refusing to pay under the policy. Count II is an insurance bad faith claim under West Virginia law. The plaintiff charges that United Teachers has a pattern and practice of denying legitimate claims and that "Jennifer Seckman knew or should have known that United denied legitimate claims when she offered its First Diagnosis Cancer Benefit policy to Judith L. Fleming . . . ." Count II also asserts that fraudulent and false representations were made by United Teachers and Seckman to Fleming for the purpose of obtaining the payment of pre-

miums. Count III again sets out what is essentially a breach of contract claim against United Teachers. Count IV alleges that Seckman and United Teachers engaged in unfair settlement practices in violation of West Virginia Code § 33–11–4. Count V is a claim for damages for emotional distress caused by the alleged unlawful acts of Seckman and United Teachers.

United Teachers was served with original process in this action on October 29, 2002, through the Secretary of State of West Virginia as its statutory agent. Seckman was personally served on October 26, 2002. United Teachers filed a Notice of Removal on November 29, 2002. Jurisdiction is based on diversity of citizenship under 28 U.S.C. § 1332(a)(1). The amount in controversy exceeds $75,000. Seckman did not join in the Notice of Removal. November 28, 2002, the thirtieth day after United Teachers was served with process, was Thanksgiving Day, a legal holiday. In its Notice of Removal, United Teachers charged that Seckman had been fraudulently joined in order to defeat the diversity jurisdiction of this court. Seckman filed a Motion to Dismiss on December 4, 2002.[*]

On December 16, 2002, Fleming filed a timely Motion to Remand. Fleming contends that United Teachers' removal petition was untimely since it was filed thirty-one days after United Teachers was served, that the removal was defective because Seckman did not join in or consent to the removal, and that Seckman was not fraudulently joined.

For the reasons discussed below, Fleming's Motion to Remand is DENIED, and Seckman's Motion to Dismiss is GRANTED.

---

[*] Seckman's motion was timely filed under the provisions of Fed.R.Civ.P. 81(c) even though it came thirty-nine days after she was originally served.

## II. Timeliness of the Removal Petition

Plaintiff makes two arguments that United Teachers' removal petition was filed too late. First, she contends that it was filed thirty-one days after United Teachers was served with original process and is therefore one day beyond the thirty-day window within which an action may be removed. Second, plaintiff maintains that, under the "first served rule," the time for removal should run from October 26, 2002, the day the original complaint was served upon Seckman. Under this calculation, the removal *petition* was filed on the thirty-fourth day.

■ The court believes United Teachers' removal petition, filed on the thirty-first day after service, to be timely under the facts of this case. Federal Rule of Civil Procedure 6(a) directs that the last day of a period within which a party must act not be counted if it falls on a legal holiday. The list of legal holidays in Rule 6(a) includes Thanksgiving Day. The court takes judicial notice that the thirtieth day after United Teachers was served with original process, Thursday, November 28, 2002, was Thanksgiving Day. Although the thirty-day period for removal is statutory and is to be strictly construed, at least two cases have held that the provisions of Rule 6(a) operate to extend the thirty-day period. *See Johnson v. Harper*, 66 F.R.D. 103 (E.D.Tenn.1975); *Boulet v. Miller Mutual Insurance Ass'n*, 36 F.R.D. 99 (D.Minn. 1964). Accordingly, the removal petition was not untimely simply because it was filed on the thirty-first day.

■ Similarly, the court cannot accept plaintiff's argument that the "first-served rule" renders the removal petition untimely. The United States Court of Appeals declined to adopt the first served rule in *McKinney v. Board of Trustees of Maryland Community College*, 955 F.2d 924 (4th Cir.1992). Plaintiff has made an effort to distinguish *McKinney* on its facts, but a fair reading of the opinion compels the conclusion that the Fourth Circuit would not apply the rule in any case. The court therefore holds that United Teachers' removal petition was timely.

## III. Fraudulent Joinder

■ The practice of joining an agent, employee or accomplice of a corporation as a party defendant is becoming more common every day. The device is frankly used by counsel as a method to defeat federal diversity jurisdiction and it often succeeds. It succeeds because the federal courts of appeals have adopted rigorous standards governing the issue of fraudulent joinder. "Fraudulent joinder" ironically, requires neither fraud nor joinder. As our court of appeals stated in *AIDS Counseling and Testing Centers v. Group W. Television, Inc.*, 903 F.2d 1000, 1003 (4th Cir.1990): " 'Fraudulent joinder' is a term of art [which] does not reflect on the integrity of plaintiff or counsel, but is merely the rubric applied when a court finds either that no cause of action is stated against [a] nondiverse defendant, *or in fact* no cause of action exists." (emphasis in original).

Diversity jurisdiction is as old as the federal court system, having its genesis in the Judiciary Act of 1789. From the beginning it has been enmeshed in controversy. Its traditional justifications are two, each supported by powerful voices. First was the fear that state courts would be prejudiced against out-of-state litigants. Chief Justice Marshall tactfully voiced this fear in *Bank of the United States v. Deveaux*, 9 U.S. 61, 87, 5 Cranch 61, 3 L.Ed. 38 (1809) (overruled on other grounds). The second argument goes back even further—to Alexander Hamilton and *The Federalist*, No. 81. Hamilton argued that, at least as to matters of federal law, the

federal courts were much better qualified than state courts. As a result, he contended as much judicial business as possible should be directed to the federal courts.

 Authorities question whether either basis for diversity jurisdiction retains legitimacy in the modern context. As a result, the current trend is to limit diversity jurisdiction and some would prefer to eliminate it altogether. *See* Charles A. Wright, et al., *Federal Courts* § 23 (5th ed.1994). This trend is reflected in federal appeals court cases involving fraudulent joinder. *Hartley v. CSX Transp., Inc.*, 187 F.3d 422, 424 (4th Cir.1999), is representative of such cases. There, our court of appeals said: "The party alleging fraudulent joinder bears a heavy burden—it must show that the plaintiff cannot establish a claim even after resolving all issues of law and fact in the plaintiff's favor." This standard is said to be even more favorable to the plaintiff than the standard for ruling on a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure. *See id. See also Miller v. BAS Technical Employment*, 153 F.Supp.2d 835, 837 (S.D.W.Va.2001). To defeat removal all that is required is the possibility of a right to relief by the plaintiff. *See Marshall v. Manville Sales Corp.*, 6 F.3d 229, 233 (4th Cir.1993).

 Although the rigor of the fraudulent joinder standard is draconian, there are a few cases where this standard is regularly met; the present case falls squarely within one of those categories. In West Virginia, duly licensed insurance agents acting within the scope of their employment may not be sued in their individual capacity in tort or in contract. Under West Virginia law, which the court must apply in this diversity case, the agent is not a party to the insurance contract. As the Supreme Court of Appeals of West Virginia stated in *Shrewsbery v. National*

*Grange Mutual Insurance Co.*, 183 W.Va. 322, 395 S.E.2d 745, 748 (1990), "[An insurance agent] is not party to a contract with the insured; rather, he helps the company procure and service the company's contract with the insured." *Shrewsbery* is consistent with the long-standing rule in West Virginia that the agent of a disclosed principal who acts within the scope of his authority may not be held personally liable on a contract he obtains for his principal. *See Hoon v. Hyman*, 87 W.Va. 659, 105 S.E. 925 (1921); *Hurricane Milling Co. v. Steel & Payne Co.*, 84 W.Va. 376, 99 S.E. 490 (1919).

 Generally accepted authority extends this rule of contract to tort cases. Chief Judge Haden summarized the governing rules of law as follows in *Benson v. Continental Insurance Co.*, 120 F.Supp.2d 593, 595 (S.D.W.Va.2000):

> As a general rule, "[w]here the agent is the agent of the insurer, acts within the scope of his authority, and his principal is disclosed, he is not liable to the insured either in contract or in tort." 43 Am.Jur.2d, Insurance § 138. West Virginia law specifically establishes a person who solicits an application for insurance is the agent of the insurer, not the insured. *See,* W. Va.Code § 33–12–23. Additionally, an agent or broker has personal liability exposure on an insurance contract only where the insurer is not licensed to transact insurance in this state. *See id,* § 33–12–21.

 In the instant case, it seems clear that Seckman was acting within the scope of her authority as agent for United Teachers at all material times. The plaintiff artfully argues that she has an independent tort claim against Seckman because Seckman engaged in fraudulent conduct toward plaintiff with knowledge that United Teachers engaged in a pat-

tern of bad faith denial of benefits. The specific allegations of the complaint cut heavily against this theory, however. Each allegation of the complaint directed at Seckman links her alleged unlawful conduct with similar unlawful conduct of United Teachers. If Seckman did in fact commit the wrongs with which she is charged she did so, according to the complaint, in conjunction and complicity with United Teachers for whom she worked. She therefore was acting within the scope of her agency relationship with United Teachers even if she acted unlawfully. In fact, the complaint itself states in numbered paragraph 4: "At all times referred to, the Defendant, Jennifer Seckman, was an on duty employee, agent and servant of United, and she sold a United cancer insurance policy to the Plaintiff, Judith L. Fleming."

The court therefore concludes that Seckman was fraudulently joined, that the complaint fails to state any claim against Seckman upon which relief can be granted, and that Seckman's motion to dismiss must be granted.

### IV. *Failure of Seckman to Join in Removal*

Lastly, plaintiff contends that removal of this action was defective because the record does not show that Seckman joined in, or consented to, the removal. While the general rule requires all defendants to join in a removal petition, an exception is made in the case of fraudulent joinder. The leading case appears to be *Jernigan v. Ashland Oil, Inc.*, 989 F.2d 812 (5th Cir.), *cert. denied*, 510 U.S. 868, 114 S.Ct. 192, 126 L.Ed.2d 150 (1993). In that case, an injured pipeline worker, who was domiciled in Louisiana, brought suit against several companies including three Louisiana entities. For various reasons, all the Louisiana companies were deemed insulated from liability to the plaintiff. After the case was removed to federal court, the plaintiff filed a motion to remand arguing, among other things, that not all defendants had consented to the removal. The court held such consent to be unnecessary, and said:

> [A]s a general rule, removal requires consent of all co-defendants. In cases involving alleged improper or fraudulent joinder of parties, however, application of this requirement to improperly or fraudulently joined parties would be nonsensical, as removal in those cases is based on the contention that no other proper defendant exists.

*Id.* at 816. *See also Polyplastics, Inc. v. Transconex, Inc.*, 713 F.2d 875 (1st Cir. 1983) (holding that a party fraudulently joined to defeat removal need not join in a removal petition and is disregarded in determining diversity of citizenship).

Since the court has concluded that Seckman was fraudulently joined, her failure to join in the petition for removal does not make the removal of this case defective.

### V. *Conclusion*

For all of the reasons discussed above, the motion of plaintiff to remand is DENIED, and the motion of defendant Seckman to dismiss is GRANTED.

The Clerk is directed to provide a copy of the court's Memorandum Opinion and Order to counsel of record.