Virginia LAWSON and William
Lawson, Plaintiffs,

v.

AMERICAN GENERAL ASSURANCE
COMPANY, et al., Defendants.

Civil Action No. 5:05–cv–01173.

United States District Court,
S.D. West Virginia,
Beckley Division.

Sept. 12, 2006.

James A. Spenia, William L. Mundy, Mundy & Nelson, Huntington, WV, for Plaintiffs.

David P. Donahue, Michael D. Mulvaney, Maynard Cooper & Gale, Birmingham, AL, Lawrence E. Morhous, Brewster, Morhous, Cameron, Caruth, Moore, Kersey & Stafford, Bluefield, WV, Phillip B. Ball, Thomas S. Lilly, Smith & Lilly, Princeton, WV, for Defendants.

## MEMORANDUM OPINION AND ORDER

JOHNSTON, District Judge.

Before the Court is Plaintiffs' Motion to Remand [Docket 6]. For the reasons stated herein, the motion is **GRANTED**.

### A. Background

Plaintiffs Virginia P. Lawson and William Lawson filed the instant action on October 21, 2005, in the Circuit Court of Raleigh County, West Virginia. Plaintiffs seek damages from Defendants for an alleged breach of an insurance contract. Specifically, Plaintiffs allege that on or about August 12, 2003, they purchased a credit disability/life insurance policy ("the Policy") for their 2003 Lincoln Navigator. The Policy was purchased from American General Assurance Company ("American General") "through its agents, officers and employees[.]" (Compl.¶¶ 9–13.) WGI Insurance Services ("WGI") and Andy Clark Ford, Lincoln, Mercury, Inc. ("ACFLM") are both alleged to be agents of American General. (Compl. ¶¶ 3 & 4.) Plaintiffs further allege that on or about October 30, 2003, Plaintiff Virginia P. Lawson became disabled and made a claim under the Policy, which "was in full force and effect." (Compl. ¶¶ 15, 16, & 19.) On November

25, 2003, Plaintiffs received notice from American General that certain portions of the Policy were cancelled, and American General refunded a portion of the premium to Plaintiffs. (Compl.¶ 46.) Finally, Plaintiffs allege that American General wrongfully denied Plaintiffs' claim, and that each of the Defendants are liable to Plaintiffs. (Compl.¶¶ 19, 20–55.)

Plaintiffs are citizens of Raleigh County, West Virginia. (Compl.¶ 1.) American General is a limited liability company organized under the laws of the State of Illinois, with its principal place of business in New Jersey. (Notice of Removal ¶ 13.) WGI is an entity organized under the laws of California with its principal place of business in California. (Notice of Removal ¶ 14.) ACFLM is a West Virginia corporation with its principal place of business in West Virginia. (Notice of Removal ¶ 15.) [1]

On December 21, 2005, pursuant to 28 U.S.C. § 1446, Defendants filed a timely notice of removal bringing the case to this Court.[2] Defendants claim that the Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332. Defendants argue that although Plaintiffs and ACFLM are each residents of West Virginia, ACFLM was fraudulently joined and its citizenship should be disregarded. On January 6, 2006, pursuant to 28 U.S.C. § 1447, Plaintiffs filed a timely motion to remand this case to the Circuit Court of Raleigh County. In their motion, Plaintiffs contend that they have stated a valid claim against ACFLM and that it was not fraudulently joined.

## B. Legal Standard

Any civil action brought in state court may be removed if the district court has original jurisdiction over the action. 28 U.S.C. § 1441(a). Article III of the United States Constitution provides, in pertinent part, that "the judicial Power shall extend to ... Controversies ... between Citizens of different States." Congress first authorized the federal courts to exercise diversity jurisdiction in the Judiciary Act of 1789, ch. 20, § 11, 1 Stat. 78. In its current form, the diversity statute provides that "[t]he district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between ... citizens of different states[.]" 28 U.S.C. § 1332(a)(1). Since its enactment, the Supreme Court of the United States has interpreted the statute to require "complete diversity" of citizenship. *See Strawbridge v. Curtiss*, 3 Cranch 267, 2 L.Ed. 435 (1806).

On the face of Plaintiffs' Complaint, complete diversity of citizenship is lacking because Plaintiffs and ACFLM are all citizens of West Virginia. However, the judicially created "fraudulent joinder" doctrine provides an exception to the complete diversity requirement, allowing a district court to assume jurisdiction even if there are nondiverse defendants at the time of removal. *Marshall v. Manville Sales Corp.*, 6 F.3d 229, 232–33 (4th Cir. 1993). Fraudulent joinder requires neither fraud nor joinder. Rather, it is "a term of art [which] does not reflect on the integrity of plaintiff or counsel, but is merely the rubric applied when a court

---

1. The Complaint also names a "John Doe" as a Defendant. (Compl. ¶ 5.) According to the record, Mr. Doe has not been served with process and, therefore, he is not a Defendant in this action.

2. ACFLM joined in the removal by way of its filing on December 22, 2005.

finds either that no cause of action is stated against [a] nondiverse defendant, or in fact no cause of action exists." *AIDS Counseling and Testing Ctrs. v. Group W Television, Inc.*, 903 F.2d 1000, 1003 (4th Cir.1990). A finding of fraudulent joinder "permits a district court to disregard, for jurisdictional purposes, the citizenship of nondiverse defendants, assume jurisdiction over a case, dismiss the nondiverse defendants, and thereby retain jurisdiction." *Mayes v. Rapoport*, 198 F.3d 457, 461 (4th Cir.1999). To show that a nondiverse defendant has been fraudulently joined:

> the removing party must establish either: [t]hat there is *no possibility* that the plaintiff would be able to establish a cause of action against the in-state defendant in state court; or [t]hat there has been outright fraud in the plaintiff's pleading of jurisdictional facts.

*Mayes*, 198 F.3d at 464. "The party alleging fraudulent joinder bears a heavy burden—it must show that the plaintiff cannot establish a claim even after resolving all issues of law and fact in the plaintiff's favor." *Hartley v. CSX Transp., Inc.*, 187 F.3d 422, 423 (4th Cir.1999). In fact, the fraudulent joinder standard "is even more favorable to the plaintiff than the standard for ruling on a motion to dismiss under Fed.R.Civ.P. 12(b)(6)." *Mayes*, 198 F.3d at 464. Accordingly, "[a] claim need not ultimately succeed to defeat removal; only a possibility of a right to relief need be asserted." *Marshall*, 6 F.3d at 233.

■ When reviewing the legal sufficiency of a complaint, the court must "accept as true all well-pleaded allegations and must construe the factual allegations in the light most favorable to the plaintiff." *Randall v. United States*, 30 F.3d 518, 522 (4th Cir.1994). The court is not, however, "so bound by the plaintiff's legal conclusions, since the purpose of Rule 12(b)(6) is to test the legal sufficiency of the complaint." *Id.* In deciding whether fraudulent joiner has been committed, the court need not limit its jurisdictional inquiry to the facts alleged in the pleadings; the entire record may be considered as a whole in determining whether there is a basis for joinder. *Mayes*, 198 F.3d at 464.

■ Once an action has been removed, the removing party bears the burden of showing that the district court has original jurisdiction. *Mulcahey v. Columbia Organic Chems. Co.*, 29 F.3d 148, 151 (4th Cir.1994). "[C]ourts should resolve all doubts about the propriety of removal in favor of retained state court jurisdiction." *Hartley v. CSX Transp., Inc.*, 187 F.3d 422, 425 (4th Cir.1999).

## C. Analysis

Defendants claim that ACFLM was fraudulently joined in this action because Plaintiffs have not stated a valid cause of action against it under West Virginia law. More specifically, Defendants allege that Plaintiffs' claims against ACFLM for "Reasonable Expectations" (Count IV) and "Negligence in Selling Insurance Policy" (Count V) are meritless. The Court need only examine Plaintiffs' reasonable expectations claim to conclude that ACFLM was not fraudulently joined.

Plaintiffs allege that the Policy was purchased from American General "through its agents," one of which was ACFLM. (Compl. ¶¶ 4 & 9.) The Complaint further alleges that:

> The plaintiffs . . . had a reasonable expectation of coverage under the policy sold to them by the defendant, American General, because the plaintiffs paid for this policy upon information and belief, *from all the defendants,* [with the belief] that they would be covered if they were to become injured at any time frame

**530**

*[sic.]* in which the policy was to be in effect. (emphasis added)

(Compl. ¶ 44.)

██ In West Virginia, duly licensed insurance agents acting within the scope of their employment may not be sued in their individual capacity in tort or in contract. *Fleming v. United Teacher Assoc. Ins. Co.,* 250 F.Supp.2d 658, 662 (S.D.W.Va.2003) (Faber, C.J.). As the Supreme Court of Appeals of West Virginia stated in *Shrewsbery v. Nat'l Grange Mut. Ins. Co.,* 183 W.Va. 322, 395 S.E.2d 745, 748 (W.Va. 1990), "[An insurance agent] is not party to a contract with the insured; rather, he helps the company procure and service the company's contract with the insured." *Shrewsbery* is consistent with the long-standing rule in West Virginia that the agent of a disclosed principal who acts within the scope of his authority may not be held personally liable on a contract he obtains for his principal. *See* Syl. pt. 1, *Hoon v. Hyman,* 87 W.Va. 659, 105 S.E. 925 (1921); Syl. pt. 1, *Hurricane Milling Co. v. Steel & Payne Co.,* 84 W.Va. 376, 99 S.E. 490 (1919). Generally accepted authority extends this rule of contract to tort cases. Chief Judge Haden summarized the governing rules of law as follows in *Benson v. Cont'l Ins. Co.,* 120 F.Supp.2d 593, 595 (S.D.W.Va.2000):

> As a general rule, "[w]here the agent is the agent of the insurer, acts within the scope of his authority, and his principal is disclosed, he is not liable to the insured either in contract or in tort." 43 Am.Jur.2d, Insurance § 138. West Virginia law specifically establishes a person who solicits an application for insurance is the agent of the insurer, not the insured. *See,* W. Va.Code § 33–12–23 [now at § 33–12–22]. Additionally, an agent or broker has personal liability exposure on an insurance contract only where the insurer is not licensed to transact insurance in this state. *See id.,* § 33–12–21 [now at § 33–12–20].

There is authority, however, to support liability for insurance agents under certain circumstances. For example, the West Virginia Supreme Court of Appeals found that the West Virginia Unfair Trade Practices Act ("WVUTPA") created a private cause of action against employees of insurance companies who engage in conduct violating that Act. *See Taylor v. Nationwide Mut. Ins. Co.,* 214 W.Va. 324, 589 S.E.2d 55, 61 (2003) (finding that "a cause of action exists in West Virginia to hold a claims adjuster employed by an insurance company personally liable for violations of the [WVUTPA.]"). This Court has held that WVUPTA claims against insurance agents are sufficient "to escape the fraudulent joinder rule[.]" *Pinnoak Res., LLC v. Certain Underwriters at Lloyd's, London,* 394 F.Supp.2d 821, 825 (S.D.W.Va.2005) (Faber, C.J.); *see also Halkias v. AXA Equitable Life Ins. Co.,* 2006 WL 890620, at *3 (S.D.W.Va. Apr.4, 2006) (Goodwin, J.); *Fellure v. Equitable Variable Life Ins. Co.,* 2005 WL 3115851, at *2 (S.D.W.Va. Nov. 21, 2005) (Copenhaver, J.).

██ In this case, Plaintiffs seek to escape the fraudulent joinder rule by asserting that they have an independent action against ACFLM for reasonable expectation of insurance under *Keller v. First Nat'l Bank,* 184 W.Va. 681, 403 S.E.2d 424 (1991). Generally, "the doctrine of reasonable expectations is that the objectively reasonable expectations of applicants and intended beneficiaries regarding the terms of insurance contracts will be honored even though painstaking study of the policy provisions would have negated those expectations." Syl pt. 1, *Nat'l Mut. Ins. Co. v. McMahon & Sons, Inc.,* 177 W.Va. 734, 356 S.E.2d 488 (1987). The doctrine of reasonable expectations was once considered a canon of construction and thus ap-

plied only to ambiguous insurance contracts. The doctrine has been extended, however, beyond circumstances involving ambiguous policy language to include "situations where an insurer attempts to deny coverage based on an exclusion that was not communicated to the insured, or where there is a misconception about the insurance purchased." *Am. Equity Ins. Co. v. Lignetics, Inc.*, 284 F.Supp.2d 399, 406 (N.D.W.Va.2003) (Keeley, C.J.) (citing *Romano v. New England Mut. Life Ins. Co.*, 178 W.Va. 523, 362 S.E.2d 334 (1987) and *Keller*, 184 W.Va. 681, 403 S.E.2d 424).

In *Keller*, the West Virginia Supreme Court applied the doctrine of reasonable expectations to agents of insurance companies. In that case, the plaintiff purchased credit life insurance in conjunction with a loan she obtained from the First National Bank of Beckley. The insurance was purchased through the Bank, as agent for Integon Life Insurance Co. During a renewal of the loan, the Bank discovered that plaintiff's health was deteriorating, and sought to cancel the insurance. The Bank, however, did not notify the plaintiff that the credit life insurance had been cancelled. In reversing the circuit court's dismissal of plaintiff's claims, the Supreme Court held that "If the creditor, who is an agent for an insurance company, creates a reasonable expectation of insurance coverage, then both the insurance company and the creditor would be bound." *Id.* at 428.

This holding was restated in *Costello v. Costello*, 195 W.Va. 349, 465 S.E.2d 620, 624 (1995) (quoting *Keller*). In that case, the plaintiff, who was injured in an automobile accident, filed suit against her automobile insurance carrier and her insurance agent for denial of coverage. The policy

had only listed her husband as a named insured. Plaintiff testified, however, that her insurance agent told her that she and her husband were to receive identical coverage. The circuit court entered a directed verdict in favor of both defendants because the policy did not list plaintiff as an insured. The Supreme Court reversed the circuit court for failing to submit plaintiff's reasonable expectation claim against the insurance agent to the jury.[3] In so holding, the Court stated that the agent's "conduct during the application process may have created a reasonable expectation of insurance [for the plaintiff]." *Id.* at 624.

In the instant case, Plaintiffs allege that they purchased the Policy from American General through its agent, ACFLM. Plaintiffs further allege that they had a reasonable expectation of insurance coverage, and that ACFLM is responsible for creating that expectation. Based on the *Keller* and *Costello* holdings, Plaintiffs have clearly demonstrated "a possibility of a right to relief" against ACFLM. *Marshall*, 6 F.3d at 233. Therefore, ACFLM was not fraudulently joined in this action.[4]

### D. Attorney's Fees

In their reply brief, Plaintiffs request that Defendants be required to pay Plaintiffs' costs and expenses incurred as a result of the removal and remand of this action. Plaintiffs' request is **DENIED.** Such an award is discretionary, pursuant to 28 U.S.C. § 1447(c) ("An order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal."). This case presented an issue

---

3. The plaintiff had not appealed the circuit court's directed verdict against the insurance carrier.

4. The Court need not, and does not, consider whether Plaintiff's claim against ACFLM for negligence in selling insurance policy is a valid claim under West Virginia law.

of first impression in this District. Accordingly, the Court **FINDS** that an award of costs and attorney's fees is not appropriate. *See Salmons v. Prudential Ins. Co. of Am.*, 48 F.Supp.2d 620, 627 (S.D.W.Va.1999) (Haden, C.J.).

### E. Conclusion

For the reasons stated above, Plaintiffs' Motion to Remand [Docket 6] is **GRANTED**. Plaintiffs' request for attorney's fees and costs is **DENIED**. Accordingly, the Court **REMANDS** this case to the Circuit Court of Raleigh County for further proceedings.

The Court **DIRECTS** the Clerk to send copies of this Order to all counsel of record and any unrepresented party and a certified copy to the Clerk of the Circuit Court of Raleigh County.