**Ronald G. SALMONS, Plaintiff,**

v.

**The PRUDENTIAL INSURANCE COMPANY OF AMERICA, et al., Defendants.**

**No. Civ.A. 2:99–0215.**

United States District Court, S.D. West Virginia, Charleston Division.

May 4, 1999.

**622**

Richard D. Owen, Tammy G. Owen and Alexander Macia, Goodwin & Goodwin, Charleston, WV, for plaintiff.

Elizabeth D. Harter and Lisa M. Drabik, Bowles, Rice, McDavid, Graff & Love, Charleston, WV, for defendant.

1. Plaintiff acknowledges the Union was "the exclusive bargaining representative for Plaintiff and a collective-bargaining agreement was in place at all times relevant to Plaintiff's claims." Pl.'s Mem. in Supp. of Pl.'s Mot. to Remand at 3.

2. The operative provision is hidden in a section of the 87–page CBA called "Modification of Sections 7 and 13 of the Prudential Representative's Agreement" at page 81. Without

## MEMORANDUM OPINION AND ORDER

HADEN, Chief Judge.

Pending are Plaintiff's motion to remand and Defendants'· motion to dismiss. Both motions are ripe for the Court's disposition. For reasons discussed more fully below, the Court **GRANTS** Plaintiff's motion to remand and **DENIES** as moot Defendants' motion to dismiss.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Salmons was an insurance agent for Defendant Prudential Insurance Company of America ("Prudential"). In October 1989 the United Food & Commercial Workers International Union ("the Union"), representing all Prudential agents in West Virginia, including Plaintiff, negotiated an Agent's Agreement with Prudential.[1] The collective bargaining agreement ("CBA") provided in pertinent part, "That the appointment as Prudential Representative and this Agreement may be terminated either by the Prudential Representative or the Company at any time."[2] Defs.' Mot. to Dismiss, Ex. A, p. 81.

. From about July 1992 to October 1998, Salmons maintained an insurance office in West Hamlin, West Virginia. Sometime in 1997 Prudential imposed a minimum annual quota known as the Net First Year Commission Credits; agents who failed to meet the quota would be terminated. Salmons did not meet the quota in 1998 and on January 6, 1999 Prudential termi-

identifying the subject as "termination" or "discharge" or using any other term which might highlight it, the CBA simply reads:

2. Section 13 of the Prudential Representative's Agreement is hereby modified as follows:
Sec. 13.(a) That the appointment as Prudential Representative and this Agreement may be terminated either by the Prudential Representative or the Company at any time.

nated his Agent's Agreement, effective January 22, 1999.

On February 16, 1999 Salmons filed this civil action in the Circuit Court of Lincoln County, West Virginia, alleging violations of W.Va.Code §§ 33–12A–3, *Contractual Relationship Between Insurance Companies and Agents* (the "Agent statute"), which provides that an insurance agent who has been employed for more than five years pursuant to a written contract can be terminated only for certain specified reasons.[3]

Defendants removed to this Court alleging Plaintiff's claim is preempted by Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185, which provides federal question jurisdiction pursuant to 28 U.S.C. § 1331. Alternatively, Defendants propose the Agent statute conflicts with federal law so that conflict preemption applies. In lieu of an Answer, Defendants moved to dismiss for failure to state a claim upon which relief can be granted. Fed.R.Civ.P. 12(b)(6). Defendants rely on the CBA, which allows Prudential to discharge Salmons at any time with no requirement that a reason be given.

Plaintiff has moved to remand, arguing Section 301 preemption is not complete; state claims which do not require interpretation of the CBA are not preempted. Because Plaintiff's state law claims may be resolved without such CBA analysis, Plaintiff argues this Court is without jurisdiction and must remand this action.

## II. ARGUMENT

### A. Removal and Remand Standard

■ Removal statutes must be construed strictly against removal. *Adkins v. Gibson*, 906 F.Supp. 345 (S.D.W.Va.1995) (Haden, C.J.) (citing *Mulcahey v. Columbia Organic Chem. Co.*, 29 F.3d 148, 151 (4th Cir.1994)); *accord Murray v. State*

*Farm Fire & Cas. Co.*, 870 F.Supp. 123, 124 (S.D.W.Va.1994) (Haden, C.J.). The burden of establishing the propriety of removal falls upon the removing party. *Mulcahey*, 29 F.3d at 151. If federal jurisdiction is doubtful, remand is necessary. *Id.; see also* 28 U.S.C. § 1447(c) ("If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded."). Accordingly, the Court must determine first whether there is a proper basis for removal which provides subject matter jurisdiction. Without jurisdiction, the Court may not address the motion to dismiss.

### B. Section 301 preemption

■ A defendant may remove to federal court a civil action "brought in a State court of which the district courts of the United States have original jurisdiction." 28 U.S.C. § 1441(a). The Supreme Court has described the criteria for § 1441 removal:

> Only state court actions that originally could have been filed in federal court may be removed to federal court by the defendant. Absent diversity of citizenship, federal question jurisdiction is required. The presence or absence of federal-question jurisdiction is governed by the "well-pleaded complaint rule," which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint.

*Caterpillar Inc. v. Williams*, 482 U.S. 386, 392, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987). The well-pleaded complaint rule "makes plaintiff the master of the claim; he or she may avoid federal question jurisdiction by exclusive reliance on state law." *Id.* Further, a case may not be removed on the basis of a federal defense, "including the defense of preemption, even if the defense is anticipated in the plaintiff's complaint,

---

**3.** On February 5, 1999 Salmons also grieved his termination under the CBA grievance procedure.

and even if both parties concede that the federal defense is the only question truly at issue." *Id.* at 393, 107 S.Ct. 2425.

There is an exception, however, to the well-pleaded complaint rule: the complete preemption doctrine, "[where] the preemptive force of a statute is so extraordinary that it converts an ordinary state common law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule." *Caterpillar,* 482 U.S. at 392, 107 S.Ct. 2425. Complete preemption occurs whenever "Congress ... so completely pre-empts a particular area [of law] that any civil complaint raising this select group of claims is necessarily federal in character." *Metro. Life Ins. v. Taylor,* 481 U.S. 58, 63–64, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987).

Defendants assert Plaintiff's claim is completely preempted by § 301 of the LMRA, which provides in pertinent part:

> Suits for violation of contracts between an employer and a labor organization representing employees ... may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

29 U.S.C. § 185(a).

The complete preemption doctrine originated with the Supreme Court's Avco decision that § 301 entirely preempted any state cause of action for violation of contracts between an employer and a labor organization. *Avco Corp. v. Aero Lodge No. 735, Int'l Ass'n of Machinists & Aerospace Workers,* 390 U.S. 557, 560, 88 S.Ct. 1235, 20 L.Ed.2d 126 (1968). "Within its proper sphere, § 301 has been accorded unusual preemptive power." *Livadas v. Bradshaw,* 512 U.S. 107, 122 n. 16, 114 S.Ct. 2068, 129 L.Ed.2d 93 (1994). That sphere is not unlimited, however, and every state civil action that somehow involves a CBA is not necessarily preempted. State laws are completely preempted by § 301 "only if such application [of state law] requires the interpretation of a collective-bargaining agreement." *Lingle v. Norge Div. of Magic Chef, Inc.,* 486 U.S. 399, 413, 108 S.Ct. 1877, 100 L.Ed.2d 410 (1988). The rationale is that breaches of CBAs will be uniformly resolved by applying federal labor law principles, rather than potentially inconsistent state law principles. *Id.* at 406, 108 S.Ct. 1877.

To apply *Lingle*'s § 301 complete preemption test, the Court examines the elements of the state law causes of action to determine whether resolution of the state law claim requires CBA interpretation. *Id.* at 406–07, 108 S.Ct. 1877; *see also McCormick v. AT & T Technologies, Inc.,* 934 F.2d 531, 535 (4th Cir.1991).

Count I of Plaintiff's complaint alleges violation of the Agent statute, W.Va.Code § 33–12A–3.[4] To prove a violation of the Agent statute, Plaintiff must demonstrate: 1) he was an insurance agent, employed pursuant to a written con-

---

4. W.Va.Code § 33–12A–3 provides in pertinent part:

> No insurance company may cancel, refuse to renew or otherwise terminate a written contractual relationship with an insurance agent who has been employed or appointed pursuant to that written contract by such insurance company for a period of more than five years, except for "good cause," as prescribed herein.
>
> ...
>
> The following matters are "good cause" for an insurance company to terminate the contractual relationship with its agent:

> (a) Criminal misconduct or gross negligence relating to the business or premises of the insurance agency;
> (b) Fraud or moral turpitude;
> (c) Abandonment or unattendance of the business or premises of the insurance agency for such period of time as may unreasonably interfere with the transacting of business;
> (d) The failure by the agent to pay moneys over to the company for insurance contracts sold by the agency;
> (e) The death or disability of the agent; and
> (f) Upon the company becoming insolvent or discontinuing any line of insurance or any business purpose [.]

tract with an insurance company for a period of more than five years; 2) he was terminated by the insurance company; and 3) the insurance company terminated him for a reason other than those enumerated in the statute. No element of the claim requires any reference to the CBA, much less CBA interpretation.

*Count* II alleges Defendant Thomas J. LeRose ("LeRose"), the managing director of Prudential's Charleston, West Virginia office, aided and abetted Prudential's violation of the statute by impliedly threatening Salmons with adverse action if he did not resign, rather than being fired. Aiding and abetting may be proved by evidence that LeRose willfully joined with Prudential and willfully participated in the statutory violation. Again, the CBA will not be implicated.

*Count* III alleges LeRose harassed and intimidated Salmons, attempting to coerce his resignation. Proof of harassment, coercion, and intimidation implicates the motives and actions of LeRose, but requires no interpretation of the CBA.

■ Finally, *Count* IV alleges a civil conspiracy among LeRose and others unknown to violate the Agent statute. A civil conspiracy is a combination of two or more persons by concerted action to accomplish an unlawful purpose or to accomplish some purpose, not in itself unlawful, by unlawful means. *Dixon v. American Indus. Leasing Co.,* 162 W.Va. 832, 834, 253 S.E.2d 150, 152 (1979). As with the other counts,

neither proof of the conspiracy nor of the wrongful acts, which are its ostensible object (examined above), will require interpretation of the CBA. Accordingly, proof of Plaintiff's cause of action under the Agent statute does not require interpretation of the CBA and, therefore, it is not preempted by § 301.

Prudential's defense will be that the discharge provision of the CBA does not require any reason be given for terminating a Prudential representative. Defendants argue, therefore, the resolution of Plaintiff's state law claims are dependent upon an analysis of the CBA. Defs.' Mem. in Supp. of Defs.' Mot. to Dismiss at 6. As related previously, the provision Defendants rely on states, "the appointment as Prudential Representative and this Agreement may be terminated either by the Prudential Representative or the Company at any time." While a court resolving Plaintiff's claims may consult this provision of the CBA, no interpretation of the provision is necessary. The provision is clear, unequivocal, and unambiguous. The "bare fact that a collective-bargaining agreement will be consulted in the course of state-law litigation plainly does not require the claim to be extinguished." *Livadas,* 512 U.S. at 124, 114 S.Ct. 2068.

Accordingly, the Court finds and concludes this civil action brought under the West Virginia Agent statute is not subject to § 301 complete preemption, which would convert it to a federal action over which this Court would have jurisdiction.[5]

---

5. This result is consistent with § 301 preemption jurisprudence because Plaintiff claims no violation or breach of a CBA, the area of federal preemption. Salmons' claim turns on no duty, right, or obligation created or ratified by the agreement. Quite the opposite. One issue will be whether the Union bargained away insurance agents' substantive rights under the Agent statute. Concerning preemption, the Supreme Court cautioned:

> [N]ot every dispute concerning employment, or tangentially involving a provision of a collective bargaining agreement, is preempted· by § 301 or other provisions of federal labor law. Section 301 on its face says nothing about the substance of what

private parties may agree to in their labor contract. Nor is there any suggestion that Congress, in adopting § 301, wished to give substantive provisions of private agreements the force of federal law, ousting any inconsistent state regulation. Such a rule of law would delegate unions and unionized employers the power to exempt themselves from whatever state labor standards they disfavored. Clearly, § 301 does not grant the parties to a collective-bargaining agreement the ability to contract for what is illegal under state law. In extending the pre-emptive effect of § 301·beyond suits for breach of contract, it would be inconsistent with congressional intent under that section

## C. Conflict Preemption

■■■ Defendants argue two types of preemption apply here.[6] Complete preemption occurs where Congress evidences an intent to occupy a given field. *Silkwood v. Kerr–McGee Corp.*, 464 U.S. 238, 248, 104 S.Ct. 615, 78 L.Ed.2d 443 (1984) (citations omitted). If Congress has not entirely displaced state regulation over the matter in question, state law yet may be preempted to the extent it actually conflicts with federal law. Conflict preemption occurs when it is impossible to comply with both state and federal law, *id.* (citing *Florida Lime & Avocado Growers, Inc. v. Paul*, 373 U.S. 132, 142–143, 83 S.Ct. 1210, 10 L.Ed.2d 248 (1963), or where the state law stands as an obstacle to the accomplishment of the full purposes and objectives of Congress, *id.* (citing *Hines v. Davidowitz*, 312 U.S. 52, 67, 61 S.Ct. 399, 85 L.Ed. 581 (1941)).

Defendants argue the "good cause" provision of the Agent statute conflicts with, and is thus preempted by, federal law. Defendants correctly cite *Cutright v. Metropolitan Life Ins. Co.*, 201 W.Va. 50, 491 S.E.2d 308 (1997), for the proposition that, to the extent the "good cause" provision of the Agent statute conflicts with Title VII, the Agent statute is preempted.[7] It is not clear, however, whether Defendants believe this preemption somehow extends to any cause of action brought under the

---

to pre-empt state rules that proscribe conduct, or establish rights and obligations, independent of a labor contract.

*Allis–Chalmers Corp. v. Lueck*, 471 U.S. 202, 211–12, 105 S.Ct. 1904, 85 L.Ed.2d 206 (1985). The Court concluded that "state-law rights and obligations that do not exist independently of private agreements, and that as a result can be waived or altered by agreement of private parties, are preempted by those agreements." *Id.* at 213, 105 S.Ct. 1904.

The parties have extensively briefed the issue of whether the Agent·statute provides negotiable rights, which could potentially be preempted using this analysis, or non-negotiable rights, which could not. Under *Allis–Chalmers*, however, the preemption test is essentially the same as the *Lingle* test:

Our analysis must focus, then, on whether the Wisconsin tort action for breach of the duty of good faith as applied here confers nonnegotiable state-law rights on employers or employees independent of any right established by contract, or, instead, whether evaluation of the tort claim is inextricably intertwined with consideration of the terms of the contract.

*Id.* The test is "whether resolution of the state law claim is substantially dependent upon analysis of the terms of an agreement made between the parties in a labor contract." *Id.* at 220, 105 S.Ct. 1904.

This Court's analysis hopefully demonstrates that resolution of Salmons' claim is not substantially dependent upon analysis of the terms of the CBA. Accordingly, the Court does not reach the issue of the potential negotiability of the requirements of state law. The Court does note, however, that waiver of a statutorily-protected right is not presumed from a general contractual provision, but

such undertaking must be "explicitly stated." *Metro. Edison Co. v. Nat'l Labor Relations Bd.*, 460 U.S. 693, 708, 103 S.Ct. 1467, 75 L.Ed.2d 387 (1983). "More succinctly, the waiver must be clear and unmistakable." *Id.* Absent such signs of intentional, agreed-upon waiver, questions of the Union's duty of fair representation arise.

6. State law can be preempted in three general ways: (1) an express statement by Congress (express preemption) or implied preemption either (2) where Congress intended that federal law occupy the field (field preemption) or (3) where there is an actual conflict between state and federal law. 19 Charles A. Wright, Arthur R. Miller and Edward H. Cooper, *Federal Practice and Procedure* § 4517 (1996).

7. The *Cutright* court held:

2. When a workplace is permeated with discriminatory intimidation, ridicule and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment, Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* (1994), is violated.

3. Insofar as any provision of W.Va. Code § 33–12A–1 *et seq.* conflicts with Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* (1994), Title VII controls pursuant to the Supremacy Clause of the United States Constitution, and, therefore, an insurance company may terminate the employment of an insurance agent for creating a discriminatorily hostile or abusive work environment.

*Cutright*, syl. pts. 2, 3, 201 W.Va. at 59, 491 S.E.2d at 316.

Agent statute or whether Defendants believe the Agent statute conflicts with § 301. Plaintiff alleges no discrimination by Prudential; accordingly Title VII preemption is irrelevant to this action.

■ In conflict preemption analysis, "[t]he crucial inquiry is not whether state law reaches matters also subject to federal regulation, but whether the two laws function harmoniously rather than discordantly." *Morseburg v. Balyon,* 621 F.2d 972, 978 (9th Cir.1980), *cert. denied,* 449 U.S. 983, 101 S.Ct. 399, 66 L.Ed.2d 245 (1980). Defendants do not identify the explicit conflict they perceive between the Agent statute and § 301, but they do cite, without analysis or discussion, a series of Ninth Circuit cases, which hold that state laws that protect job security only are preempted by § 301.[8] This line of cases represents standard § 301 complete preemption analysis, however, rather than conflict preemption. *See, e.g., Young,* 830 F.2d at 999 (relying on the *Allis–Chalmers* state-law tort preemption test); *Chmiel,* 873 F.2d at 1285 (same). Thus, Defendants do not identify and the Court cannot conceive any conflict between the Agent statute, which enumerates reasons for which insurance agents may be fired, and § 301, which provides federal jurisdiction for CBA disputes.

Even if the Court were to find conflict preemption, the presence of conflict preemption does not establish federal question jurisdiction. "Rather than transmogrifying a state cause of action into a federal one—as occurs with complete preemption—conflict preemption serves as a defense to a state action." *Giles v. NYL-Care Health Plans, Inc.,* 1999 WL 198885, *2 (5th Cir. Apr.9, 1999). "When a complaint contains only state causes of action that the defendant argues are merely conflict-preempted, the court must remand for want of subject matter jurisdiction." *Id.*

Accordingly, the Court finds and concludes conflict preemption does not apply to create federal jurisdiction over this civil action.

### III. CONCLUSION

The Defendants have failed to carry their burden of proof to establish the propriety of removal based on § 301 preemption of Plaintiff's state law claims. Defendants' failure to establish federal question jurisdiction under § 301 leaves this Court without subject matter jurisdiction. Accordingly, the Court **REMANDS** the action to the Circuit Court of Lincoln County, West Virginia pursuant to 28 U.S.C. § 1447(c). Defendants' motion to dismiss is **DENIED** as moot.

■ Plaintiff's request for attorneys' fees and other costs associated with the preparation of the motion to remand is **DENIED.** Such an award is discretionary, pursuant to 28 U.S.C. § 1447(c) ("An order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal.") This case presented an issue of first impression in this District. Accordingly, the Court finds and concludes the award of costs and attorneys' fees is not appropriate.

The Clerk is directed to send a copy of this Memorandum Opinion and Order to counsel of record and a certified copy to the Clerk of the Circuit Court of Lincoln County, West Virginia.

---

8. Our Court of Appeals has not addressed this issue. Defendants cite *Brentwood v. Boeing Co.,* 168 F.3d 498, 1999 WL 50859 (9th Cir.(Wash.) Jan. 7, 1999) (citing *Chmiel v.*

*Beverly Wilshire Hotel Co.,* 873 F.2d 1283, 1286 (9th Cir.1989); *Young v. Anthony's Fish Grottos, Inc.,* 830 F.2d 993, 999–1001 (9th Cir.1987)).