_____

No. 95-3489
_____

G. Thomas Murff,                          *
                                          *
            Appellant,                    *
                                          *    Appeal from the United States
      v.                                  *    District Court for the
                                          *    Western District of Missouri.
Professional Medical Insurance            *
Company; Professional Medical             *
Risk Retention Group, In                  *
Liquidation,                              *
                                          *
            Appellees.                    *

_____

                  Submitted:  May 16, 1996

                     Filed:  October 4, 1996
                          _____

Before BOWMAN, HEANEY, and WOLLMAN, Circuit Judges.
                          _____


WOLLMAN, Circuit Judge.


     Thomas Murff appeals from the district court's order dismissing his
claim under the Age Discrimination in Employment Act (ADEA), 29 U.S.C. §§
621 et seq.  We reverse and remand.[1]


                              **I.**


     Murff's  employer,  Professional  Medical  Insurance  Company  and
Professional Medical Risk Retention Group (collectively ProMed) demoted
Murff on March 15, 1993, and then terminated him on February 15, 1994,
replacing him with a younger employee.  On February 7, 1994, ProMed entered
rehabilitation under the

_____

     [1]ProMed's motion to strike portions of Murff's brief and
appendix is denied as moot in light of the fact that the matters
contained  in  the  challenged  materials  are  irrelevant  to  our
disposition of the appeal.

supervision of the Circuit Court of Jackson County, Missouri, acting as the receivership court. See Insurers Supervision, Rehabilitation and Insolvency Act (Insolvency Act), Mo. Rev. Stat. §§ 375.1150 et seq. (1994). On February 17, 1994, Murff brought this action under the ADEA and the Missouri Human Rights Act. When ProMed's rehabilitation was converted to a liquidation on April 7, 1994, the state receivership court enjoined all persons from obtaining any judgment against ProMed.[2] The Director of the Missouri Department of Insurance then appointed Cynthia Clark Campbell as Special Deputy Receiver of ProMed to effect liquidation proceedings.

The district court dismissed Murff's claim pursuant to Federal Rule of Civil Procedure 12(b)(1), finding that the McCarran-Ferguson Act, 15 U.S.C. §§ 1011 et seq., precluded it from exercising jurisdiction because "the independent exercise of jurisdiction over Murff's claim would impair Missouri's Insolvency Act." The court also ruled that "[s]hould the liquidation court conclude that a separate tribunal should hear the case, then jurisdiction may become proper here." The district court's dismissal of Murff's complaint presents a question of law that we review de novo. See Furrer v. Brown, 62 F.3d 1092, 1093 (8th Cir. 1995), cert. denied, 116 S. Ct. 1567 (1996).

**II.**

Missouri's Insolvency Act establishes procedures for the liquidation of bankrupt insurance companies and sets priorities for their policyholders and other creditors. See State ex rel Missouri Property & Casualty Ins. Guar. Ass'n v. Brown, 900 S.W.2d 268, 270 (Mo. Ct. App. 1995). The Insolvency Act provides that no "existing

---

[2]A state court cannot, of course, enjoin federal court actions. General Atomic Co. v. Felter, 434 U.S. 12 (1977); Donovan v. Dallas, 377 U.S. 408 (1964); Fragoso v. Lopez, 991 F.2d 878, 881 (1st Cir. 1993).

actions be maintained or further presented after issuance of [a liquidation] order," § 375.1188, converts such actions to claims in receivership court, § 375.1210, and establishes the priority of distribution of such claims. § 375.1218.

Section 2(b) of the McCarran-Ferguson Act provides:

> No Act of Congress shall be construed to invalidate, impair, or supersede any law enacted by any State for the purpose of regulating the business of insurance . . . unless such Act specifically relates to the business of insurance.

15 U.S.C. § 1012(b).

The McCarran-Ferguson Act allows states to regulate and tax the business of insurance free from barriers that broad-sweeping federal statutes might inadvertently impose on insurance companies. United States Dep't of Treasury v. Fabe, 508 U.S. 491, 500 (1993). The Act was Congress' response to the Supreme Court's decision in United States v. South-Eastern Underwriters Ass'n, 322 U.S. 533 (1944), which had held that the Sherman Act was applicable to insurance companies. The McCarran-Ferguson Act's basic purposes were to allay doubts about states' power to tax and regulate insurance companies, see F.T.C. v. Travelers Health Ass'n, 362 U.S. 293, 299 (1960), and to "protect state regulation primarily against inadvertent federal intrusion" similar to that threatened by the Sherman Act. Barnett Bank of Marion County, N.A. v. Nelson, 116 S. Ct. 1103, 1112 (1996).

A federal statute is inverse-preempted under the McCarran-Ferguson Act if (1) it does not "specifically relate[] to the business of insurance"; (2) the state statute was enacted "for the purpose of regulating the business of insurance"; and (3) the federal statute would "invalidate, impair or supersede" the state statute. Fabe, 508 U.S. at 501.

**A.**

We agree with the district court that the ADEA does not specifically relate to the business of insurance. In Barnett Bank, the Court analyzed a federal statute permitting a small-town national bank to "*act as the agent for any fire, life, or other insurance company*." 116 S. Ct. at 1106 (quoting 12 U.S.C. § 92 (1916)) (emphasis in original). Noting that the statute explicitly referred to insurance, the Court held that it specifically related to the business of insurance. Id. at 1111. The Court contrasted implicit references to insurance made by general language such as "business activity" with the words "finance, banking, and insurance," which make such a reference explicitly and specifically. Id.

The ADEA does not contain a specific, explicit reference to insurance. The only reference to insurance companies is the term "employer," at best only an implicit reference to insurance. The ADEA thus fails the Barnett Bank specificity test.

**B.**

We agree with the district court that the Missouri Insolvency Act was enacted "for the purpose of regulating the business of insurance." A state statute regulates the business of insurance if it "affects the relation of insured to insurer and the spreading of risk." Barnett Bank, 116 S. Ct. at 1112. "[F]ederal law must yield to the extent the [state] statute furthers the interests of policyholders." Fabe, 508 U.S. at 501-02. See also Union Labor Life Ins. Co. v. Pireno, 458 U.S. 119, 129 (1982); Group Life & Health Ins. Co. v. Royal Drug Co., 440 U.S. 205, 211-212 (1979); S.E.C. v. National Securities, Inc., 393 U.S. 453, 460 (1969).

The Ohio statute at issue in Fabe gave the claims of policyholders priority over those of the federal government. The

Court found that the scheme protected policyholders "by ensuring the payment of [their] claims despite the insurance company's intervening bankruptcy." The scheme safeguarded the performance of insurance contracts, "an essential part of the `business of insurance." <u>Fabe</u>, 508 U.S. at 505. The Ohio statute, therefore, was "a law `enacted for the purpose of regulating the business of insurance.'" <u>Id.</u> at 505.

We conclude that the Missouri statute purporting to stay all actions against an insolvent insurer is "a law regulating the business of insurance." It protects policyholders because it preserves the assets of the insolvent insurer's estate, thereby enhancing the ability of an insolvent insurance company to perform its contractual obligations.[3]

## C.

In determining whether the federal statute will "impair, invalidate, or supersede" the state statute, we must examine the interaction between the federal and state statutes and analyze whether this interaction is one the McCarran-Ferguson Act was intended to address. The district court, identifying no conflict between the substantive provisions of the ADEA and the Insolvency Act, nonetheless found that the exercise of jurisdiction over Murff's ADEA claim would impair Missouri's Insolvency Act.

The McCarran-Ferguson Act seeks to "protect state regulation primarily against inadvertent federal intrusion," <u>Barnett</u>, 116 S. Ct. at 1112. Thus, the McCarran-Ferguson Act applies whenever Congress "is attempting to regulate" broadly and that regulation would intrude "in the sphere reserved primarily to the States by

---

[3]For an example of a state statute that has been held not to regulate the business of insurance, <u>see</u> <u>International Ins. Co. v. Duryee</u>, 1996 WL 536678 (6th Cir. Sept. 24, 1996).

the McCarran-Ferguson Act."  <u>National Securities</u>, 393 U.S. at 463.

In <u>National Securities</u>, the Securities and Exchange Commission (SEC) attempted to unwind an allegedly fraudulent merger of two insurance companies that Arizona had approved.  The Supreme Court rejected the state's argument that any SEC interference with the merger would "invalidate, impair, or supersede" the state's right to protect policyholders, stating that "[w]e cannot accept this overly broad restriction on federal power."  <u>Id.</u> at 462-63.  The Court explained that the federal government sought to regulate an area entirely distinct from insurance law and that Arizona law did "not command[] something that the Federal Government [sought] to prohibit."  <u>Id.</u> at 462-63.  <u>See also</u> <u>Villafane-Neriz v. F.D.I.C.</u>, 75 F.3d 727, 736 (1st Cir. 1996) (no "impairment" of state statute if federal statute does not directly prohibit state-allowed activity and influence on state control is merely indirect); <u>Merchants Home Delivery Service, Inc. v. Frank B. Hall & Co.</u>, 50 F.3d 1486, 1492 (9th Cir.) (a federal law "will be precluded only where [it] expressly prohibit[s] acts permitted by state law, or vice versa"), <u>cert. denied</u>, 116 S. Ct. 418 (1995).[4]

_____

[4]Murff cites <u>Spirt v. Teachers Ins. & Annuity Ass'n</u>, 691 F.2d 1054 (2d Cir. 1982), <u>vacated on other grounds</u>, 463 U.S. 1223 (1983), for the proposition that the McCarran-Ferguson Act does not apply to statutes such as the ADEA.

> The McCarran Act was never meant to prevent, and could not prevent, Congress from explicitly imposing requirements on employers and their agents under the civil rights statutes, the National Labor Relations Act, or any other statute that seeks to enforce compliance with federal policies in such fields as civil rights, labor and other areas of national concern.

<u>Id.</u> at 1066.  As the Seventh Circuit has pointed out, however, <u>Spirt</u> stands on doubtful ground.  <u>N.A.A.C.P. v. American Family Mut. Ins. Co.</u>, 978 F.2d 287, 293-97 (7th Cir. 1992), <u>cert. denied</u>, 508 U.S. 907 (1993).  In light of our holding that the ADEA does not impair the Missouri Insolvency Act, we need not reach this issue.  We note that Congress could, of course, except the ADEA from the reach of the McCarran-Ferguson Act, just as it has the National Labor Relations Act, the Fair Labor Standards Act, and the Merchant Marine Act.  15 U.S.C. § 1014.

When viewed in the light of the principles and purposes underlying the McCarran-Ferguson Act, as explained in <u>Barnett Bank</u> and <u>National Securities</u>, there is no inherent conflict between the ADEA and the Insolvency Act.  The ADEA does not prohibit something that the Insolvency Act commands, nor does it command something that the Insolvency Act prohibits.  The provisions of the ADEA itself, applied to insurance companies, are entirely compatible with the state's regulation of insurance law.

ProMed does not dispute this point, but contends instead that the exercise of federal jurisdiction over Murff's federal claim would impair the Insolvency Act's comprehensive scheme for efficiently and equitably liquidating insolvent insurance companies.  As we see it, however, the adjudication of an ADEA claim in federal court would not so substantially impair the deputy receiver's ability to effect ProMed's liquidation under the Insolvency Act as to run afoul of the proscriptions of the McCarran-Ferguson Act.

Any money judgment that Murff may obtain against ProMed would at best appear to be a low-ranked claim in the order of priorities established by section 375.1218.  Likewise, any equitable relief in terms of reinstatement would be highly improbable in light of ProMed's soon-to-occur liquidation.  There would, of course, be the administrative bother and expense of having to defend against the ADEA action, but this is a factor that the district court can weigh in deciding whether to stay Murff's action.

In <u>Wolfson v. Mutual Ben. Life Ins. Co.</u>, 51 F.3d 141 (8th Cir. 1996), a life insurance policy beneficiary sued an insurer for benefits under an ERISA plan.  The insurer then became insolvent,

with the result that the state's "mandatory special procedure to adjudicate claims against the insolvent" was applicable. Id. at 145. The district court stayed the beneficiary's claim, and we affirmed under the Burford[5] and Colorado River[6] abstention doctrines. In affirming the stay, we implicitly acknowledged that the district court's jurisdiction over Wolfson's federal ERISA claim was proper. We also stated that "[t]he district court properly protected Wolfson's claim for monetary relief under ERISA by staying rather than dismissing" it, suggesting that surrendering jurisdiction over Wolfson's federal claim would have been erroneous. Id. at 147.

Wolfson recognized that the McCarran-Ferguson Act reflects "a strong federal policy of deferring to state regulation of the insurance industry," including insolvency statutes. Id. at 147. This policy, however, does not translate into state preemption of federal jurisdiction or void every federal statute under which a plaintiff may sue an insolvent insurer in federal court, but merely counsels that a federal court consider the propriety of abstaining from or staying the federal action. See Hartford Cas. Ins. Co. v. Borg-Warner Corp., 913 F.2d 419, 426-27 (7th Cir. 1990); Lac D'Amiante du Quebec v. American Home Assurance Co., 864 F.2d 1033, 1038-39 (1988), cert. denied, 493 U.S. 842 (1989); Law Enforcement Ins. Co., Ltd. v. Corcoran, 807 F.2d 38, 44 (2d Cir. 1986), cert. denied, 481 U.S. 1017 (1987).

We conclude, therefore, that the district court should not have dismissed the action but should instead have considered whether the action should be stayed. Although the statement "jurisdiction may become proper here" may have the overtones of a stay, still and all the order was that of a dismissal and not a

---

[5]Burford v. Sun Oil, 319 U.S. 315 (1943).

[6]Colorado River Water Cons. Dist. v. United States, 424 U.S. 800 (1976).

stay.

The judgment is reversed, and the case is remanded to the district court for further proceedings consistent with this opinion.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.