589 S.E.2d 55

**Thomas W. TAYLOR, Plaintiff,**

v.

**NATIONWIDE MUTUAL INSURANCE COMPANY and Scarlett Tarley, Defendants.**

**No. 31154.**

Supreme Court of Appeals of
West Virginia.

Submitted Sept. 24, 2003.

Decided Nov. 21, 2003.

---

Robert D. Aitcheson, Esq., Charles Town, David J. Romano, Clarksburg, West Virginia, Attorney for Plaintiffs.

Anita R. Casey, Esq., MacCorkle, Lavender, Casey & Sweeney, Charleston, West Virginia, Attorney for Defendants.

Paul T. Farrell, Jr., Esq., Wilson, Frame, Benninger & Metheney, Michael J. Romano, Esq., Romano Law Office, for Amicus Curiae, West Virginia Trial Lawyers Association.

James S. Crockett, Jr., Esq., Attorney for Amicus Curiae, West Virginia Insurance Federation.

MAYNARD, Justice:

█ In this case, we answer a certified question from the United States District Court for the Northern District of West Virginia. The certified question is as follows:

> Does a cause of action exist in West Virginia to hold an insurance company's employee claims adjuster personally liable for violations of the West Virginia Unfair Trade Practices Act, W.Va.Code § 33–11–1, et seq? [1]

Upon review of the arguments of the parties and the applicable law, we hold that a cause of action exists in West Virginia to hold a claims adjuster employed by an insurance company personally liable for violations of the West Virginia Unfair Trade Practices Act, W.Va.Code §§ 33–11–1 to—10.

█ According to W.Va.Code § 51–1A–3 (1996):

> The supreme court of appeals of West Virginia may answer a question of law certified to it by any court of the United States ... if the answer may be determinative of an issue in a pending cause in the certifying court and if there is no controlling appellate decision, constitutional provision or statute of this state."

The answer to the certified question herein is determinative of an issue in a pending cause of action in the federal district court, and there is no controlling precedent. Consequently, certification is a proper means to decide this issue.[2]

## I.

## FACTS

The general facts as set forth in the pleadings and the record are as follows. In March 1998, the plaintiff, Thomas Taylor, a resident of Jefferson County, West Virginia, purchased from an agent in Maryland a Nationwide auto insurance policy. In December 2001, Mr. Taylor was involved in a two-car vehicle accident in which he was injured. The driver of the other vehicle was determined to be at fault. Mr. Taylor settled with the driver of the other vehicle for the $100,000 per person liability limit on the other driver's auto liability policy.

Mr. Taylor then filed a claim with defendant herein Nationwide Mutual Insurance Company to receive underinsured motorist coverage on his Nationwide policy.[3] According to the declarations page of the policy, the limits of his coverage were $20,000 per person and $40,000 per occurrence. Mr. Taylor claimed, however, that these limits were incorrect because Nationwide did not offer him the opportunity to purchase optional levels of underinsured motorist coverage in the manner required by law.[4]

---

1. This Court reformulates the question to substitute "Unfair *Trade* Practices Act," as W.Va.Code §§ 33–11–1 to 10 are known, in place of "Unfair *Claims* Practices Act." *See* W.Va.Code § 51–1A–4 (1996) ("The supreme court of appeals of West Virginia may reformulate a question certified to it.").

2. We take this opportunity to acknowledge the briefs filed by amici curiae West Virginia Trial Lawyers Association, on behalf of the plaintiff, and West Virginia Insurance Federation, on behalf of the defendants.

3. Mr. Taylor states in his brief that he purchased a Nationwide Century II auto insurance policy,

no. 92 47H 936541 to insure his 1999 Ford Escort.

4. According to W.Va.Code § 33–6–31d (1993), an insurer who issues a motor vehicle insurance policy in this State shall provide, upon request, to the named insured or person who applies for the policy a form containing, among other things, optional limits of uninsured and underinsured motor vehicle coverage. Failure of the insured or applicant to return the form within the prescribed time periods creates a presumption that he or she received an effective offer of the optional coverages and knowingly and intelligently rejected the coverages. According to the

In an April 18, 2002, letter, Scarlett Tarley, a claims adjuster for Nationwide and a defendant in this case, informed Mr. Taylor that "it is our position that policy limits are $20,000.00[,]" and "[w]e have found the waivers to be valid in regards to this matter."[5] The letter also informed Mr. Taylor that Nationwide was issuing him a check for the policy limits.

Mr. Taylor subsequently sued Nationwide *and* claims adjuster Scarlett Tarley in the Circuit Court of Jefferson County alleging breach of fiduciary duty, breach of contract, and bad faith against Nationwide, and unfair claims settlement practices against *both* Nationwide and Ms. Tarley.[6]

Thereafter, Nationwide and Ms. Tarley filed a Notice of Removal of the plaintiff's case in the United States District Court for the Northern District of West Virginia.[7] As a basis for removal to federal court, the defendants asserted that Ms. Tarley, a resident of West Virginia, had been fraudulently joined as a party in order to defeat the district court's diversity jurisdiction because there is no actionable claim against Ms. Tarley recognized by West Virginia law.[8]

Mr. Taylor then filed a Motion to Remand the action to state court. Subsequently, the District Court requested that the parties submit memoranda of law regarding the propriety of naming an insurance company's em-

---

parties, whether Mr. Taylor was given an opportunity to purchase additional underinsured coverage depends on the validity of a 1999 mass mailer from Nationwide to all of its customers and whether Mr. Taylor received the mailing. These issues are not before this Court.

**5.** *See* footnote 4, *supra.*

**6.** The allegations against Ms. Tarley, set forth under Count III of Mr. Taylor's complaint titled "Unfair Claims Settlement Practices (Nationwide and Tarley)," state as follows, in part:

27. Nationwide, as Plaintiff's insurer and Tarley, as claims adjuster, had a duty to comply with the provisions of the West Virginia Unfair Trade Practices Act, § 33–11–1, et seq. and the regulations of the West Virginia Insurance Commissioner promulgated thereunder....
28. Despite the fact that Nationwide had knowledge sufficient to justify the reformation of Plaintiff's policy to include underinsured motorist coverage, Nationwide has wrongfully refused to do so.
29. Nationwide and Tarley wrongfully failed to provide a reasonable explanation for the denial of Plaintiff's claim to reform his policy.
30. Nationwide and Tarley wrongfully failed to provide a reasonable explanation of a basis for contending that Plaintiff only had $20,000.00 per person, $40,000.00 each occurrence underinsured motorist coverage.
31. Nationwide and Tarley have misrepresented the terms, conditions, pertinent facts and insurance policy provisions with respect to Plaintiff's claims and Nationwide and Tarley have failed in their other duties to Plaintiff enumerated above and as set forth in West Virginia Code, § 33–11–1 et seq. and the regulations thereunder.
32. Nationwide and Tarley have knowingly, wrongfully, wantonly, wilfully, intentionally and maliciously engaged in a pattern of conduct that is unconscionable, outrageous, deceptive and wrong with regard to Nationwide's

coverage positions and business practices. Said conduct is contrary to West Virginia public policy, the laws of this State and the rulings of the West Virginia Supreme Court of Appeals.

\* \* \* \* \* \*

37. Nationwide and Tarley have committed acts, omissions and/or failures described herein knowingly, wrongfully, wilfully, intentionally and maliciously and as a part of a general business practice of violating various provisions of the West Virginia Code, § 33–11–4(9).

**7.** A civil action brought in state court may be removed to a United States district court if the district court has original jurisdiction over the action. 28 U.S.C. § 1441(a). District courts have original jurisdiction of civil actions, *inter alia*, "where the matter in controversy exceeds the sum or value of $75,000" and is between citizens of different states. 28 U.S.C. § 1332(a)(1). "Under the 'complete diversity rule,' no party may share a common citizenship with any party on the other side." *Jackson v. Allstate Ins. Co.*, 132 F.Supp2d 432, 433 (N.D.W.Va.2000) *citing Strawbridge v. Curtiss*, 7 U.S. (3 Cranch) 267, 2 L.Ed. 435 (1806).

**8.** The "fraudulent joinder" doctrine provides an exception to the requirement of complete diversity and permits a federal court to "exercise its removal jurisdiction even though an otherwise non-diverse party is a defendant." *Jackson*, 132 F.Supp.2d at 433, *citing Mayes v. Rapoport*, 198 F.3d 457, 461 (4th Cir.1999). "In order to establish the fraudulent joinder [of] a non-diverse party, the removing party bears a heavy burden of showing that there is no possibility of establishing a cause of action against that non-diverse party." *Jackson, id. Citing Hartley v. CSX Transp. Inc.*, 187 F.3d 422, 424 (4th Cir.1999) (quoting *Marshall v. Manville Sales Corp.*, 6 F.3d 229, 232 (4th Cir.1993)).

ployee claims adjuster for purposes of defeating a federal court's diversity jurisdiction.

By order of January 24, 2003, the District Court certified the question set forth above to this Court. The District Court also stated that if such a cause of action exists, it will remand the case to the Jefferson County Circuit Court. If such a cause of action does not exist, it will deny the remand motion and dismiss Ms. Tarley as a defendant.

## II.

## STANDARD OF REVIEW

■ We recognized in Syllabus Point 1 of *Light v. Allstate Ins. Co.*, 203 W.Va. 27, 506 S.E.2d 64 (1998) that "[a] de novo standard is applied by this Court in addressing the legal issues presented by a certified question from a federal district or appellate court."

## III.

## DISCUSSION

■ This is a straightforward case of statutory interpretation in that we are called upon to construe the provisions of the Unfair Trade Practices Act, W.Va.Code § 33–11–1 to—10. "The primary object in construing a statute is to ascertain and give effect to the intent of the Legislature." Syllabus Point 1, *Smith v. State Workmen's Compensation Com'r*, 159 W.Va. 108, 219 S.E.2d 361 (1975). "Once the legislative intent underlying a particular statute has been ascertained, we proceed to consider the precise language thereof." *State ex rel. McGraw v. Combs Services*, 206 W.Va. 512, 518, 526 S.E.2d 34, 40 (1999). Moreover, when we interpret a statutory provision, this Court is bound to apply, and not construe, the enactment's plain language. We have held that "[a] statutory provision which is clear and unambiguous and plainly expresses the legislative intent will not be interpreted by the courts but will be given full force and effect." Syllabus Point 2, *State v. Epperly*, 135 W.Va.

877, 65 S.E.2d 488 (1951), *see also Martin v. Randolph County Bd. of Educ.*, 195 W.Va. 297, 312, 465 S.E.2d 399, 414 (1995) (quoting *Connecticut Nat'l Bank v. Germain*, 503 U.S. 249, 253–54, 112 S.Ct. 1146, 1149, 117 L.Ed.2d 391, 397 (1992) ("[C]ourts must presume that a legislature says in a statute what it means and means in a statute what it says there.").

The purpose of the Unfair Trade Practices Act "is to regulate trade practices in the business of insurance ... by defining, or providing for the determination of, all such practices in this State which constitute unfair methods of competition or unfair or deceptive acts or practices and by prohibiting the trade practices so defined or determined." W.Va. Code § 33–11–1 (1974). The Act achieves this purpose by expressly prohibiting any person from engaging "in any trade practice which is defined in this article as, or determined pursuant to section seven [§ 33–11–7] of this article to be, an unfair method of competition or an unfair or deceptive act or practice in the business of insurance." W.Va.Code § 33–11–3 (1974). Unfair methods of competition and unfair or deceptive acts or practices are defined in detail in W.Va.Code § 33–11–4 (2002). In order to enforce the Act, the State Insurance Commissioner is granted the power to issue cease and desist orders; require the payment of penalties to the State; and revoke or suspend the license of a violator of the Act. W.Va.Code § 33–11–6 (1974).

■ In addition, W.Va.Code § 33–11–6(c) provides that "[n]o order of the [Insurance Commissioner] pursuant to this article or order of court to enforce it, or holding of a hearing, shall in any manner relieve or absolve any person affected by such order or hearing from any other liability, penalty or forfeiture under law." Based in part on this subsection, this Court has held that "[a]n implied private cause of action may exist for a violation by an insurance company[9] of the

---

**9.** The defendants cite the fact that Syllabus Point 2 of *Jenkins* refers specifically to "an insurance company" as support for their argument that a private cause of action does not exist under the Act to hold a claims adjuster personally liable for violations of the Act. We note, however, that in

*Jenkins* the plaintiff sued only the insured's insurance company, and the sole issue in *Jenkins* was "whether W.Va.Code, 33–11–4(9), relating to unfair insurance claim settlement practices, gives rise to an initial direct cause of action against an

unfair settlement practice provisions of W.Va.Code, 33–11–4(9)[.]" [10] Syllabus Point 2, in part, *Jenkins v. J.C. Penney Cas. Ins. Co.,* 167 W.Va. 597, 280 S.E.2d 252 (1981), *overruled on other grounds by State ex rel. State Farm Fire & Cas. Co. v. Madden,* 192 W.Va. 155, 451 S.E.2d 721 (1994) (footnote added). In *Jenkins,* this Court explained that its "past acceptance of an implied cause of action for a statutory violation is deeply ingrained. We are virtually the only jurisdiction that permits a private cause of action for violations of statutes requiring sidewalks to be in good repair." *Jenkins,* 167 W.Va. at 600, 280 S.E.2d at 255 (footnote and citations omitted). We also based our decision on the fact that "the administrative remedy provides no direct relief for an injured person, but only provides sanctions against the company or fines in favor of the State." *Jenkins,* 167 W.Va. at 605, 280 S.E.2d at 257(footnote omitted). Finally, this Court noted that "the strong policy declaration in our statute against unfair insurance practices initially suggests the appropriateness of a private cause of action." *Id. See also Mutafis v. Erie Ins. Exchange,* 174 W.Va. 660, 328 S.E.2d 675 (1985) (holding that a private cause of action exists for violations of W.Va. Code §§ 33–11–4(3) and (5) of the Unfair Trade Practices Act) and *Morton v. Amos– Lee Securities, Inc.,* 195 W.Va. 691, 466 S.E.2d 542 (1995) (holding that a private cause of action exists for violations of W.Va. Code § 33–11–4(1)(a) of the Act).[11]

Because this Court has already determined that a private cause of action exists for violations of the Unfair Trade Practices Act, we need only to look to the express terms of the Act to determine whether individual claims adjusters fall within its scope. If individual claims adjusters fall within the scope of the Act, *Jenkins* and its progeny compel the conclusion that a cause of action exists to hold them personally liable.

██ As noted above, the Act prohibits any "person" from engaging in an unfair method of competition or an unfair and deceptive act or practice in the business of insurance. Under W.Va.Code § 33–11–2(a) (1974) the definition of the term "person" includes:

> any *individual,* company, insurer, association, organization, society, reciprocal, business trust, corporation, or any other legal entity, including agents and brokers. "Person" also includes hospital service corporations, medical service corporations and dental service corporations as defined in article twenty-four [§§ 33–24–1 et seq.] of this chapter, and health care corporations

insurance company by a third-party claimant." 167 W.Va. at 598, 280 S.E.2d at 254.

**10.** Unlike West Virginia, the majority of states do not recognize a right to bring a private cause of action under their unfair claim settlement practices statutes. According to Stephen S. Ashley, in *Bad Faith Actions: Liability and Damages* § 9:03, pp. 9–9—10 (1997), "[t]hough a few states have agreed with the conclusion that the unfair claims settlement practices statutes support private claims, most have rejected private causes of action." (Footnote omitted). Information promulgated by the National Association of Insurance Commissioners indicates that twelve states permit first-party private causes of action under either their Unfair Trade Practices or Unfair Claims Settlement Practices statutes. It appears that seven of these states do so because of the express provisions of their statutes, while five of the states do so by judicial interpretation. *See* NAIC's Compendium of State Laws on Insurance Topics, "Private Rights of Action For Unfair Claims Settlement Practices" (2002).

**11.** W.Va.Code § 33–11–4(3) (2002) provides:

> No person shall make, publish, disseminate or circulate, directly or indirectly, or aid, abet or encourage the making, publishing, disseminating or circulating of any oral or written statement or any pamphlet, circular, article or literature which is false, or maliciously critical of or derogatory to the financial condition of any person and which is calculated to injure the person.

W.Va.Code § 33–11–4(5)(a) states:

> No person shall knowingly file with any supervisory or other public official, or knowingly make, publish, disseminate, circulate or deliver to any person, or place before the public, or knowingly cause directly or indirectly, to be made, published, disseminated, circulated, delivered to any person, or placed before the public, any false material statement of fact as to the financial condition of a person.

According to W.Va.Code § 33–11–4(1)(a), "[n]o person shall make, issue, circulate, or cause to be made, issued or circulated, any estimate, circular, statement, sales presentation, omission or comparison which ... misrepresents the benefits, advantages, conditions or terms of any insurance policy[.]"

as defined in article twenty-five [§§ 33–25–1 et seq.] of this chapter.[12] (Emphasis and footnote added).

This Court finds that this definition of "person" is clear and unambiguous and plainly expresses the legislative intent to include "any individual" within the scope of the term "person" for purposes of the Act. Further, it is undisputed that a claims adjuster is an individual.[13] We conclude, therefore, that individual claims adjusters fall within the Act's scope. Accordingly, we hold that a cause of action exists in West Virginia to hold a claims adjuster employed by an insurance company personally liable for violations of the West Virginia Unfair Trade Practices Act, W.Va. Code § 33–11–1 to –10.

The defendants, however, posit several arguments in support of their position that the statutory definition of "person" in the Unfair Trade Practices Act is not dispositive of the question before this Court. The defendants point out, first, that there is no statutory provision anywhere in the Unfair Trade Practices Act which allows for a private cause of action against any person or entity. The defendants assert that the Act and its corresponding legislative rules were enacted solely for regulatory purposes with violations to be dealt with by administrative penalties. As discussed above, however, the law, as stated by this Court in *Jenkins* and its progeny, is that a private cause of action exists for violations of the Act by an insurance company.[14] It would be anomalous for this Court now to hold that a private cause of action could not be brought under the Act to hold a claims adjuster personally liable where the Act's definition of "person" includes both companies and individuals.

The defendants also find support for their position in what they call the fundamental premise that all bad faith litigation emanates from the contractual obligation created between an insurance company and its insured. They assert that because Ms. Tarley was not a party to the insurance policy entered into between Nationwide and Mr. Taylor, there can be no cause of action against Ms. Tarley. We disagree. In *Jenkins*, this Court made clear that the Unfair Trade Practices Act "creates a positive duty, this duty is independent of any insurance contract[,] and a cause of action may be maintained based on the violation of the statutory duty." 167 W.Va. at 601, 280 S.E.2d at 255.

In addition, the defendants contend that W.Va.Code § 33–12B–1 to –14 which provides for the licensing of insurance adjusters, does not support the creation of individual liability of an adjuster for violation of the Unfair Trade Practices Act. The defendants opine that these code sections plainly state that an adjuster acts on behalf of an insurance company, and that the proper mechanism for dealing with an incompetent or untrustworthy adjuster is an administrative one. This Court rejected a similar argument in *Jenkins* where we were not dissuaded from recognizing a private cause of action under the Unfair Trade Practices Act despite the fact that the Act provides administrative remedies.

Moreover, the defendants aver that fundamental principles of agency law support the lack of personal liability of an insurance company's claims adjuster for purported violations of the Unfair Trade Practices Act. Again, we disagree. This Court need not look to fundamental principles of agency law in the instant case because we find that a

---

**12.** According to 114 C.S.R 14–2.4 (April 3, 2003), which further defines "person" for the purposes of W.Va.Code §§ 33–11–1, *et seq.*, " 'Person' includes any individual, company, insurer, association, organization, society, reciprocal, business trust, corporation or any other legal entity, including agents *adjustors* [sic] and brokers." (Emphasis added).

**13.** Of course, an individual within the scope of the Act must be involved in the business of insurance. According to Syllabus Point 2 of *Hawkins v. Ford Motor Co.*, 211 W.Va. 487, 566 S.E.2d 624 (2002), "[t]he Unfair Trade Practices Act, W.Va.Code §§ 33–11–1 to 10, and the tort of bad faith apply only to those persons or entities and their agents who are engaged in the business of insurance."

**14.** Notably, the rule set forth in *Jenkins* has been the law for more than twenty years during which time the Legislature has not seen fit to amend the Unfair Trade Practices Act to expressly provide that its remedies are solely administrative.

claims adjuster's individual liability arises from a positive duty created by statute and not from the common law.[15]

 Finally, the defendants and amicus curiae point to several potential adverse consequences which could arise as a result of holding claims adjusters personally liable for violations of the Unfair Trade Practices Act. However, "a statute may not, under the guise of interpretation, be modified, revised, amended, distorted, remodeled, or rewritten" by this Court simply to address public policy concerns. *State v. General Daniel Morgan Post,* 144 W.Va. 137, 145, 107 S.E.2d 353, 358 (1959) (citation omitted). As stated above, the definition of "person" in the Unfair Trade Practices Act is clear, and this Court will not amend it. Rather, it is the role of the Legislature to address issues of public policy.[16]

## IV.

## CONCLUSION

For the above-mentioned reasons, we answer the certified question as follows:

Does a cause of action exist in West Virginia to hold an insurance company's employee claims adjuster personally liable for violations of the West Virginia Unfair Trade Practices Act, W.Va.Code § 33–11–1, *et seq?*

ANSWER: Yes.[17]

Certified Question Answered.

---

**15.** Amicus curiae West Virginia Insurance Federation asserts in its brief that holding a claims adjuster personally liable for violations of the Unfair Trade Practices Act fails to advance the policy of the Act "one iota." This Court differs in that we believe that our holding furthers the Act's goal of preventing unfair or deceptive practices in the business of insurance. It does so by providing a powerful deterrent, in addition to administrative remedies, to the commission of such acts.

**16.** The author of this opinion, separate from the majority, does not believe that a private cause of action, and particularly a third-party cause of action, should exist under the Unfair Trades Practices Act. As noted in footnote 10, *supra,* the majority of states do not recognize such causes of action. I believe, rather, that the remedies under the Act should be limited to those administrative ones specifically provided for in the Act. Having said this, however, the fact remains that this Court specifically has recognized, since at least 1981, implied private causes of action under several of the Act's provisions. This being the case, the Act, by its express language, applies to an individual claims adjuster so that a cause of action may be brought against her inasmuch as the word "person" in the Act clearly must include employee claims adjusters.

**17.** At this time, we note that in this opinion we are not addressing and will leave for another day the issue of whether or not a cause of action exists to hold non-employee contractual or independent adjusters personally liable for violations of the Unfair Trade Practices Act inasmuch as that issue was not included in the certified question and was not briefed or argued in this case.