**PINNOAK RESOURCES, LLC and Pinnacle Mining Company, LLC, Plaintiffs,**

v.

**CERTAIN UNDERWRITERS AT LLOYD'S, LONDON, Allied World Assurance Company Ltd., XL Insurance (Bermuda) Ltd., Commonwealth Insurance Company, Zurich Specialties London Limited, Axis Specialty Europe, Ltd., and VeriClaim, Inc., Defendants.**

No. Civ.A.5:04–0192.

United States District Court, S.D. West Virginia, Becklet Division.

Jan. 13, 2005.

Ray A. Byrd, D. Kevin Coleman, Schrader, Recht, Byrd, Companion & Gurley, Wheeling, WV, for Plaintiffs.

Jeffrey A. Holmstrand, Wheeling, WV, James A. Varner, Geraldine S. Roberts, Heather M. Thayer, McNeer, Highland,

McMunn & Varner, Clarksburg, WV, for Defendants.

## OPINION ON MOTION TO REMAND

FABER, Chief Judge.

### I. *Introduction*

This civil action was filed originally in the Circuit Court of Wyoming County, West Virginia, on February 6, 2004. The plaintiffs are PinnOak Resources, LLC, a Delaware limited liability company with a principal place of business in Pennsylvania, and Pinnacle Mining Company, LLC, a Delaware limited liability company with a principal place of business in West Virginia. The two plaintiffs are closely related business entities and are referred to collectively hereinafter as "PinnOak." PinnOak owns and operates an underground bituminous coal mine in Wyoming County known as the Pinnacle Mine.

Remaining defendants are Certain Underwriters at Lloyd's, London ("Lloyd's"); Axis Specialty Europe Limited ("Axis"), a foreign corporation organized under the laws of the United Kingdom, with a principal place of business in Ireland; Allied World Assurance Company Limited ("AWAC"), a corporation organized under the laws of Bermuda with its principal place of business there; and VeriClaim, Inc. ("VeriClaim"), a Delaware corporation with a principal place of business in Illinois. Three additional corporations named as original defendants, XL Insurance (Bermuda) Limited ("XL"), Commonwealth Insurance Company, and Zurich Specialties London Limited have settled with the plaintiffs and are no longer parties to this action.

The remaining defendants, except for VeriClaim, are insurers who provided primary and excess "all risks" property and business interruption coverage to PinnOak.

VeriClaim acted as an adjuster for the other defendants under the policies.

PinnOak claims that the insurer defendants have failed to compensate PinnOak for covered losses arising from a series of methane explosions at the Pinnacle Mine and that VeriClaim breached duties incident to its role as claims adjuster. The complaint asserts only causes of action under West Virginia law specifically, breach of contract, common law bad faith, and violations of the West Virginia Unfair Trade Practices Act, West Virginia Code, §§ 33–11–3 and 33–11–4(9)(2004).

On March 4, 2004, all of the remaining defendants except AWAC joined in a timely notice removing this case from the Circuit Court of Wyoming County to this Court (the "Lloyd's removal"). On March 10, 2004, AWAC filed a notice, (the "AWAC removal") joining in the Lloyd's removal. The Lloyd's removal asserts that this court has diversity jurisdiction under 28 U.S.C. § 1332(a)(2)(2004) because all defendants except VeriClaim are citizens and residents of states other than the plaintiffs and VeriClaim, whose citizenship is not diverse, has been fraudulently joined to defeat federal jurisdiction. The AWAC removal contends that federal question jurisdiction under 9 U.S.C. § 203 (2004) exists because the All Risks Policy issued to PinnOak by AWAC contains a provision requiring arbitration of disputes in London, England.

AWAC claims a right to enforce the arbitration clause under the Convention on the Recognition and Enforcement of Foreign Arbitral Awards of June 10, 1958, commonly referred to as the "New York Convention." Congress approved the New York Convention and provided enforcement machinery at 9 U.S.C. §§ 201–208 (2004). 9 U.S.C. § 203 confers original jurisdiction on the United States District Courts over actions under the Convention

regardless of the amount in controversy. 9 U.S.C. § 205 specifies that such actions may be removed from state courts and that "... the ground for removal ... need not appear on the face of the complaint but may be shown in the petition for removal." AWAC is the only remaining defendant insurer with an arbitration clause in its contract of insurance.

On March 16, 2004, PinnOak filed a timely motion to remand. PinnOak makes the following three arguments in support of its motion:

(1) VeriClaim has not been fraudulently joined and, consequently, diversity does not exist since PinnOak and VeriClaim are both citizens of Delaware.

(2) There is no federal question jurisdiction because the New York Convention is "reverse preempted" by West Virginia statutes prohibiting arbitration of insurance disputes.[1]

(3) One of the original defendants, XL, did not join in the notice of removal.

For the reasons discussed below, the court rules as follows on the issues presented by PinnOak's motion to remand:

(1) VeriClaim has not been fraudulently joined; consequently, this court lacks diversity jurisdiction under 28 U.S.C. § 1332.

(2) Whether the New York Convention is reverse preempted by West Virginia statutes relating to insurance presents a substantial issue of federal law upon which the reported decisions are in conflict; accordingly, this court has jurisdiction over

AWAC's claim to enforce arbitration under 9 U.S.C. §§ 203 and 205.

(3) Since PinnOak's state law claims against the defendants other than AWAC are predominant, the court elects, pursuant to 28 U.S.C. § 1441(c), to remand all such claims to the Circuit Court of Wyoming County, retaining jurisdiction over this case only as it relates to AWAC.

(4) Since the issue of XL's failure to join in the removal is now moot as to all defendants except AWAC, the court reserves ruling on that issue and will consider it only as it relates to AWAC.

## II. Analysis

### A. Fraudulent Joinder and Diversity Jurisdiction

■ The practice of joining an agent, employee or accomplice of a defendant corporation is a device often used to defeat federal diversity jurisdiction. Here, the plaintiffs have joined as a defendant VeriClaim, a Delaware corporation which acted as claims adjuster for the defendant insurers. PinnOak charges in its complaint that VeriClaim breached its duty of good faith and fair dealing and violated the West Virginia Unfair Trade Practices Act, W. Va.Code §§ 33–11–3 and 33–11–4(9), in the handling and adjustment of PinnOak's insurance claim. The defendants contend that VeriClaim has been fraudulently joined and should be disregarded for purposes of determining whether complete diversity of citizenship exists. In other words, defendants can establish federal diversity jurisdiction only if VeriClaim, the non-diverse defendant, has been fraudulently joined.[2]

---

1. PinnOak also suggests that, even if the court holds it has jurisdiction under 9 U.S.C. §§ 203 and 205, it should exercise its discretion to remand under 28 U.S.C. § 1441(c) because PinnOak's state law claims predominate. As discussed below, the court believes the correct analysis is to follow 28 U.S.C. §§ 1441(a) and 1367.

2. Ever since the ruling of the Supreme Court in *Strawbridge v. Curtiss.*, 3 Cranch 267, 7 U.S. 267, 2 L.Ed. 435 (1806), there can be no federal jurisdiction under 28 U.S.C. § 1332

In establishing the fraudulent joinder of VeriClaim, the defendants have a heavy burden. The United States Supreme Court has held that Congress' clear intention is to restrict removal and resolve all doubts about the propriety of removal in favor of retaining state court jurisdiction. See, *American Fire & Casualty Co. v. Finn*, 341 U.S. 6, 71 S.Ct. 534, 95 L.Ed. 702 (1951). Ironically, fraudulent joinder requires neither fraud nor joinder. As our court of appeals stated in *AIDS Counseling and Testing Centers v. Group W Television, Inc.*, 903 F.2d 1000,1003 (4th Cir. 1990): " 'Fraudulent joinder' is a term of art [which] does not reflect on the integrity of plaintiff or counsel, but is merely the rubric applied when a court finds either that no cause of action is stated against [a] nondiverse defendant, or *in fact* no cause of action exists." See also, *Fleming v. United Teachers Associates Ins. Co.*, 250 F.Supp.2d 658 (S.D.W.Va.2003).

The United States Court of Appeals for the Fourth Circuit stated the general rule binding upon the court as follows in *Hartley v. CSX Transportation, Inc.*, 187 F.3d 422 (4th Cir.1999):

> To show fraudulent joinder, the removing party must demonstrate either "outright fraud in the plaintiff's pleading of jurisdictional facts" or that "there is *no possibility* that the plaintiff would be able to establish a course of action against the in-state defendant in state court."

*Id.* at 424.

Here, there is no suggestion of outright fraud, so the inquiry becomes whether: Is there any possibility that PinnOak can establish a cause of action against VeriClaim? PinnOak's complaint charges that

VeriClaim was hired by the insurer defendants to act as the adjuster for PinnOak's claims against the insurers. PinnOak's complaint sets out several allegations that VeriClaim acted in bad faith and violated provisions of the West Virginia Unfair Trade Practices Act, particularly, West Virginia Code, §§ 33–11–3 and 33–11–4(9). In *Taylor v. Nationwide Mutual Ins. Co.*, 214 W.Va. 324, 589 S.E.2d 55 (2003), the Supreme Court of Appeals of West Virginia held that there is a cause of action under this Act against a claims adjuster who is an employee of a defendant insurance company. Here, VeriClaim acted as an agent for defendants and was not an employee of any of the defendant insurers. However, there appears to be little reason to doubt that, in a proper case, the West Virginia court would extend the rule of the *Taylor* case to an adjuster who is an independent contractor or agent. The *possibility* that the rule of the *Taylor* case would be so extended is all PinnOak needs to escape the fraudulent joinder rule if West Virginia law applies.

Defendants would avoid this problem of West Virginia law by arguing that Pennsylvania law, which does not recognize a bad faith cause of action against an adjuster, applies. Relying on *Pen Coal Corp. v. McGee and Co.*, 903 F.Supp. 980 (S.D.W.Va.1995), PinnOak argues that insurance claims involving damage to property are governed by the law of the place where the property is located, in this case West Virginia. Defendants counter that Pennsylvania law should apply because PinnOak's headquarters are in Pennsylvania and the last act necessary to form the contracts of insurance took place there. Once again, however, all that is needed to escape application of the fraudulent join-

and its predecessors unless diversity is "complete"; that is, unless no defendant is a citizen of the same state as any plaintiff. Here,

PinnOak and VeriClaim are both domiciled in Delaware for diversity purposes.

der rule is the possibility that West Virginia law controls and that the courts of that state would extend the rule of the *Taylor* case to an adjuster who is not an employee. Since the choice of law rules do not point clearly to application of Pennsylvania law, there is, at a minimum, the possibility that West Virginia law will be deemed controlling. Once again, this possibility is all that is required to defeat a claim of fraudulent joinder.

■ Finally, even if choice of law rules point to Pennsylvania law as the rule of decision, West Virginia public policy could impel our courts to decline to apply the Pennsylvania rule. Choice of law rules are based on comity which is subject to exception when public policy of the forum state runs counter to the law of the place where the injury occurred. *Dallas v. Whitney*, 118 W.Va. 106, 188 S.E. 766 (1936). The Supreme Court of Appeals of West Virginia has not been reluctant to reject foreign law which runs counter to public policy of West Virginia. See, for example, *Mills v. Quality Supplier Trucking, Inc.*, 203 W.Va. 621, 510 S.E.2d 280 (1998), which held that West Virginia law should govern in a case involving an occurrence in Maryland because the Maryland rule of contributory negligence was contrary to the public policy of West Virginia, West Virginia having adopted a comparative negligence standard.

The insurance setting, an area where West Virginia has a distinct regulatory interest, is particularly susceptible to rejection of inconsistent foreign law on grounds of public policy. Under the facts of this case, the courts of West Virginia might well decline to apply foreign law since doing so could contravene public policy embodied in the West Virginia Unfair Trade Practices Act.

For all these reasons, the court concludes that there is, at a minimum, a realistic possibility that PinnOak could assert successfully its claims against VeriClaim. That is all that is required to defeat defendants' contention that VeriClaim was fraudulently joined.

B. *Federal Question Jurisdiction Under the New York Convention*

■ There are four layers of insurance coverage under the All Risks Insurance Program covering PinnOak providing a total of $75,000,000 of coverage. AWAC has 15% of the coverage under the first three layers and none under the fourth layer. AWAC's coverage limit is accordingly $7,500,000 of the first $50,000,000. AWAC's policy number 203/AN0300340 for the period of June 30, 2003, through June 30, 2004, which provides this coverage, contains a "U.K. Arbitration Clause" requiring that any dispute arising in connection with the policy, or the parties' rights with respect to any transaction involved, be resolved by arbitration in London, England.

AWAC demanded arbitration under the policy and, on or about March 1, 2004, obtained from the High Court of Justice, Queen's Bench Division, in the United Kingdom, an order enjoining PinnOak from proceeding further against AWAC in the West Virginia litigation. The injunction forbids PinnOak to serve AWAC with process or make AWAC a party to the West Virginia civil action. PinnOak has refused to abide by this order.

On March 10, 2004, AWAC joined in the notice of removal filed earlier by the other defendants and asserted as a ground for removal, in addition to diversity of citizenship, federal question jurisdiction under 9 U.S.C. §§ 203 and 205. In contrast to removal under the general federal question statute, 28 U.S.C. § 1331, under which the issue of federal law must appear on the

face of the complaint,[3] the ground for removal under 9 U.S.C. § 205 may be asserted in the removal petition. Courts have held that § 205 permits removal of any case when disposition of the case could conceivably be impacted by an arbitration clause. Easy removal of actions involving arbitration clauses with foreign nationals, such courts have said, is exactly what Congress intended in enacting § 205. See, 16 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE, § 107.15[9] (3d ed.2004) and cases cited therein.

PinnOak argues, however, that AWAC may not remove this action under 9 U.S.C. § 205 because, in an insurance case, the New York Convention is "reverse preempted" by the West Virginia Nonadmitted Insurance Act, West Virginia Code §§ 33–12C–1, et seq, (2004). This West Virginia statute provides that suit against an insurer not admitted to do business in West Virginia may be filed in West Virginia's courts notwithstanding any condition or stipulation in the policy to the contrary, and any arbitration involving such an insurer must be conducted in West Virginia regardless of what the contract of insurance says. W. Va.Code §§ 33–12C–20(g) and (h).

PinnOak's reverse preemption argument is based on the McCarran–Ferguson Act, 15 U.S.C. § 1012 (2004), which provides that no act of Congress shall be construed to invalidate, impair or supersede any state law regulating insurance. According to PinnOak, McCarran–Ferguson prevents federal preemption of state statutes regulating insurance and effectuates reverse preemption, preemption of federal law by the state regulatory statute, when the following three conditions are met: (1) The federal law does not specifically relate to

the business of insurance; (2) the federal law would invalidate, impair or supersede the state statute if applied; and (3) the state statute was enacted for the purpose of regulating insurance. This three-part test was established by the United States Court of Appeals for the Eighth Circuit in *Murff v. Professional Medical Ins. Co.*, 97 F.3d 289 (8th Cir.1996), *cert. denied*, 520 U.S. 1273, 117 S.Ct. 2452, 138 L.Ed.2d 210 (1997), and applied to reverse preempt the Federal Arbitration Act, 9 U.S.C. § 2 (2004), in *Standard Security Life Ins. Co. of New York v. West*, 267 F.3d 821 (8th Cir.2001), the latter case involving a Missouri statute prohibiting arbitration clauses in insurance contracts. Decisions from other circuits are in accord with *Murff* and *West*. See, *McKnight v. Chicago Title Ins. Co.*, 358 F.3d 854 (11th Cir.2004), *Munich American Reinsurance Co. v. Crawford*, 141 F.3d 585 (5th Cir.1998), *Stephens v. American International Ins. Co.*, 66 F.3d 41 (2d Cir.1995), and *Mutual Reinsurance Bureau v. Great Plains Mutual Ins. Co.*, 969 F.2d 931 (10th Cir.1992). A district court in the Fourth Circuit addressed the issue in *American Health and Life Ins. Co. v. Heyward*, 272 F.Supp.2d 578, (D.S.C.2003), holding that a provision in South Carolina's Uniform Arbitration Act, S.C. CODE ANN. § 15–48–10(b)(4) (2003), reverse preempted the Federal Arbitration Act through application of McCarran–Ferguson.

Many of the cases relied on by PinnOak to support its reverse preemption argument, however, involve domestic arbitrations. It is not at all clear that the same rule of decision applies to an international arbitration agreement and a treaty obligation. Here, the decisions are split. PinnOak points to cases such as *Stephens*,

---

**3.** See, *Louisville & Nashville R. Co. v. Mottley*, 211 U.S. 149, 29 S.Ct. 42, 53 L.Ed. 126 (1908).

66 F.3d 41, and *Transit Casualty Co. v. Certain Underwriters at Lloyd's of London*, 119 F.3d 619 (8th Cir.1997), for the proposition that the New York Convention is reverse preempted when the three-part test of *Murff* is satisfied. But cases such as *Continental Insurance Co. v. Jantran, Inc.*, 906 F.Supp. 362 (E.D.La.1995), hold otherwise, and the United States Court of Appeals for the Fourth Circuit has apparently not addressed the issue.

In view of this split of authority, this court concludes that AWAC's removal petition presents a substantial question of federal law.[4]

### C. Remand of State Law Claims Under 28 U.S.C. § 1367

■ Having determined that federal question jurisdiction exists, the court is required to keep the case so long as the federal question is substantial. The test of substantiality is an easy one to satisfy; a federal question is insubstantial only if it is immaterial or frivolous. See, e.g., *Hagans v. Lavine*, 415 U.S. 528, 94 S.Ct. 1372, 39 L.Ed.2d 577 (1974) and *Bell v. Hood*, 327 U.S. 678, 66 S.Ct. 773, 90 L.Ed. 939 (1946). Federal question jurisdiction is not discretionary. *Borough of West Mifflin v. Lancaster*, 45 F.3d 780 (3d Cir.1995).

■ When a case presents a federal question, the court has supplemental jurisdiction over state law claims which are part of the same case or controversy. 28 U.S.C. § 1367. The United States Supreme Court has ruled that the supplemental jurisdiction statute applies to removal actions. *City of Chicago v. International College of Surgeons*, 522 U.S. 156, 118 S.Ct. 523, 139 L.Ed.2d 525 (1997). Under the supplemental jurisdiction statute, 28 U.S.C. § 1367, the court is permitted, but is not required, to retain jurisdiction over the related state claims. A district court's discretion to decline to exercise jurisdiction under § 1367(c) exists with respect to removed claims; consequently, after removal, the court may remand any state claim it determines should not be adjudicated in federal court. See, *Carnegie–Mellon University v. Cohill*, 484 U.S. 343, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988).[5]

■ Section 1367(c)(2) of Title 28 of the United States Code allows the district court in its discretion to remand a claim supported only by supplemental jurisdiction if that claim substantially predominates over the claim upon which federal jurisdiction is based. Here, the state law claims of PinnOak are predominant over the federal claim asserted by AWAC. PinnOak filed its suit in state court and based it on legal theories supported solely by state law. The proof relative to PinnOak's claims will be distinctly different from proof relative to the arbitration issue raised by AWAC. Thus, there would be, if all the claims remained in federal court, a substantial quantity of evidence relevant only to the state claims. The state law claims, including choice of law issues, are

---

4. There is also, with regard to AWAC, the issue of what effect, if any, to give the ruling of the High Court of Justice directing that PinnOak arbitrate its claim against AWAC. It is possible that rules requiring deference to rulings of foreign courts would trump PinnOak's argument even if reverse preemption were otherwise effective.

5. PinnOak has suggested that the court could remand this case under 28 U.S.C. § 1441(c)

because state law issues predominate over a "separate and independent claim or cause of action." The court believes a § 1367 analysis to be more appropriate since AWAC's federal claim is not separate and independent within the meaning of § 1441(c), but is part of the same case or controversy as PinnOak's state claims under the rule of *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).

more complex and require more judicial resources to adjudicate than the federal claim, and are more salient in the case as a whole than is the federal question. Finally, the issues involving state law are more appropriate for resolution by a state than a federal tribunal.[6] While the state law claims are predominant as to all defendants except AWAC, the court believes them not to be predominant with respect to AWAC. AWAC's contention that Pinn-Oak's claim against it must be arbitrated is potentially dispositive of the entire case as it relates to AWAC, precluding resolution of the state claims against AWAC in this court. If AWAC does not prevail on its claim for arbitration, this court may at that time return the state claims against AWAC to state court under 28 U.S.C. § 1367(a)(3).

Accordingly, the court elects to retain jurisdiction over this case as to AWAC, pending resolution of AWAC's federal claim, and to remand the case as it relates to the other remaining defendants to state court.

### III. *Conclusion*

For the reasons discussed above, the court concludes as follows:

(1) Insofar as federal jurisdiction was based upon diversity of citizenship under 28 U.S.C. § 1332, this action was removed improvidently and without jurisdiction.

(2) Federal question jurisdiction exists over this action pursuant to 9 U.S.C. §§ 203 and 205.

(3) Issues of federal law are predominant as to PinnOak's claims against AWAC; issues of state law are predominant with regard to all other claims in the case.

(4) Pursuant to 28 U.S.C. § 1367(c)(2), the court elects to exercise its discretion and remand this case as it relates to all defendants except AWAC to the Circuit Court of Wyoming County, West Virginia, and to retain jurisdiction over this case as it relates to AWAC, pending resolution of AWAC's claim that the case against it be referred to arbitration.

An appropriate Remand Order will be entered of even date with this Opinion implementing the rulings discussed herein.

---

**6.** Cases discussing these considerations are collected at 16 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE, § 106.65 (3d ed.2004).